Steven Kenneth STALEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 71274.

Court of Criminal Appeals of Texas, En Banc.

April 27, 1994.

Rehearing Denied Sept. 21, 1994.

Danny D. Burns, Robert McCrarey, Mary B. Thornton, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Betty Marshall, Charles M. Mallin, Steven W. Conder, Marc Barta, Terri Moore & Lisa Mullen, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

McCORMICK, Presiding Judge.

Appellant was found guilty for the capital murder of Robert Read in the course of robbery. V.T.C.A., Penal Code, Section 19.03(a)(2). The trial court sentenced appellant to death after the jury affirmatively answered all the submitted special issues. Article 37.071(b), V.A.C.C.P. Appeal to this Court is automatic. Article 37.071(h), V.A.C.C.P. We will affirm.

### I.

In his first and second points of error, appellant challenges the sufficiency of the evidence. His first contention is that the evidence is insufficient to prove appellant "intentionally" killed Robert Read. Appellant's second point avers that the evidence is insufficient to prove his act was committed "deliberately." In reviewing a challenge to the sufficiency of the evidence, the standard "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Upton v. State*, 853 S.W.2d 548, 551 (Tex.Cr.App.1993). A review of the facts is necessary.

During a four-state crime spree, Tracey Duke, Brenda Rayburn, and appellant arrived on October 14, 1989 at a Steak and Ale restaurant in Tarrant County just prior to closing. After dinner and dessert, Duke and appellant removed two MAC 11 9–millimeter semiautomatic pistols from Rayburn's purse. Appellant secured the kitchen and rear area of the restaurant, while Duke proceeded to secure the front. Appellant gathered all the employees in the kitchen storeroom. During the confusion an assistant manager slipped out a rear door and called the police.

After securing the restaurant, appellant demanded that the manager present himself. Robert Read stepped forward and slightly nudged two other assistant managers, indicating they should remain where they were. Appellant then commanded Read to open the cash registers and the safe. He also dictated that the employees in the storeroom throw out their wallets, purses and aprons. One employee lifted his head, only to be kicked in the chest by appellant. Appellant threatened the other employees that if any others looked up, he'd kill them—"he'd blow them away!"

The police arrived. Believing that Read had pressed a silent alarm button, appellant threatened that if the police were outside Read was going to be the first to die. Read remained calm. He told appellant there were no panic buttons, but he would be their hostage and go out front with them as long as they did not hurt the other employees. Appellant told Read, "if you fuck up one time, I'll kill you."

Appellant, his two accomplices, and their hostage left the restaurant. Eventually they hijacked a two-door Buick on Alta Mere Road. Duke went around to the driver's side and instructed the owner of the vehicle to get out. Duke and Rayburn got in the automobile. Appellant pushed Read into the back seat of the car and followed him. Police heard several gunshots as the car accelerated.

During the high-speed pursuit of appellant and his accomplices, a brief case containing some of the stolen money and both semiautomatic pistols were discarded at various locations. Ultimately, the car broke down and the three accomplices attempted to flee. All were quickly captured. Appellant's first words to the arresting officers were, "[d]on't kill me." Upon their apprehension, the police discovered Read's body in the back seat of the Buick.

The medical examiner testified that Read had suffered a blow by a blunt object to the forehead. The nature of the wound led the examiner to believe Read's head was stationary when the blow occurred. Read had also been shot in the head, shoulder and side. The medical examiner testified Read was

shot in the right temple at a distance of one inch. Within approximately thirty seconds, Read was shot in the shoulder region. Both shots would have been fatal. The third and final bullet which would not have been immediately fatal entered Read's abdomen. The medical examiner testified that when the bullet entered Read's right shoulder his right arm was down at his side. The forensic expert testified that the gunshot to the shoulder was at a distance of approximately nine inches. There was gun powder residue on both hands of Read. The forensic expert testified the powder on Read's hands could be consistent with someone attempting to defend himself.

■ The evidence presented in the guilt phase of the trial is sufficient for a jury to rationally conclude appellant "intentionally" shot and killed Read. In his brief, appellant contends a struggle ensued in the commandeered car between appellant and Read. When Read grabbed the semiautomatic pistol from appellant, the pistol went off several times. Appellant alludes to several witnesses' testimony concerning movement inside the car as well as evidence that a bullet exited the front windshield of the Buick as evidence further supporting this theory. However, when viewed in the light most favorable to the verdict, we disagree with appellant's contention.

"The specific intent to kill may be inferred from the use of a deadly weapon, unless in the manner of its use it is reasonably apparent that death or seriously bodily injury could not result." *Godsey v. State,* 719 S.W.2d 578, 580–81 (Tex.Cr.App.1986). The evidence indicates in this instance that Read was shot at a distance of one inch in the region of the right temple as well as at a range of nine inches in the region of the right shoulder. These shots were fired within thirty seconds of each other. The evidence also indicated that appellant repeated on numerous occasions that he intended to kill Read if the police were outside. The evidence was sufficient for a jury to rationally conclude appellant intentionally shot Read as he attempted to fend off his impending execution. Appellant's first point of error is overruled.

■ We also believe the evidence is sufficient that a jury would rationally conclude appellant acted deliberately.[1]

"The facts at the guilt stage of the trial alone can often be sufficient to support the affirmative finding of the jury to the special issues at the penalty stage of the trial. *Williams v. State,* 773 S.W.2d 525, 538 (Tex.Crim.App.1988), *cert. denied,* 493 U.S. 900 [110 S.Ct. 257, 107 L.Ed.2d 207] (1989). 'A jury must find "a moment of deliberation and the determination on the actor to kill" before it is justified in answering "yes" to special issue number one.' *Kinnamon v. State,* 791 S.W.2d 84, 95–96 (Tex. Crim.App.1990). The determination of deliberateness must be found from the totality of the circumstances." *Johnson v. State,* 853 S.W.2d 527, 531 (Tex.Cr.App. 1992).

As in the first point of error, appellant points to the limited evidence of a struggle to illustrate appellant did not act deliberately.

We believe the evidence of a struggle is not inconsistent with a jury determination that appellant acted deliberately. Read's last efforts may have been an attempt to avoid his impending execution by appellant. A rational jury could believe that appellant shot Read point blank in the right temple. However, even more telling of appellant's intention to kill Read was his threats to kill Read throughout the robbery if the police were outside. The evidence indicated appellant incorrectly believed Read was responsible for summoning the officers. The evidence is sufficient to believe appellant acted deliberately. Appellant's second point of error is overruled.

---

1. The special issue provided in Article 37.071(b)(1), V.A.C.C.P., inquires,
 "whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result; ..."

## II.

■ In his third point of error, appellant argues the trial court erred in not disqualifying veniremember Aston because he was under a legal accusation of theft. Article 35.19, V.A.C.C.P., specifies that no veniremember "shall be impaneled when it appears that he is subject to the second, third or fourth cause of challenge in Article 35.16, though both parties may consent." The third cause of challenge in Article 35.16 is that the veniremember "is under indictment or other legal accusation of theft or any felony." Today, we must decide whether the phrase "other legal accusation of theft" necessarily includes a civil suit.

In exercising statutory construction, this Court has looked to the clear and unambiguous language of the statute. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Cr.App.1991); *Moore v. State,* 868 S.W.2d 787 (Tex.Cr.App. 1993). Appellant contends the term "accusation" does not have a technical legal definition and therefore it should be interpreted consistent with its common definition. In common parlance, the term "accusation" has a broad meaning including oral or written cries of wrongdoing. However, in the law, the term "accusation" is limited to "a formal charge against a person, to the effect that he is guilty of a punishable offense, laid before a court or magistrate having jurisdiction to inquire into the alleged crime." Black's Law Dictionary, 5th Ed.1983; *United States v. Patterson,* 150 U.S. 65, 68, 14 S.Ct. 20, 21, 37 L.Ed. 999 (1893). We believe it was the clear import of the Legislature that the phrase "other legal accusation" was to correspond with the legal definition of "accusation," specifically a formal criminal charge against an individual. Therefore, a civil pleading alleging conversion does not constitute a cause of challenge under Article 35.19. Accordingly, appellant's third point of error is overruled.

In his sixth point of error, appellant contends the trial court erred in overruling his objection to the State's racially motivated peremptory challenge to veniremember Calvert. After the State's peremptory challenge, appellant objected alleging the challenge violated Article 35.261, V.A.C.C.P., and *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).[2]

Recently, in *Chambers v. State,* we addressed *Batson* challenges stating,

"In *Batson,* the Supreme Court outlined an analytical tool for testing the challenges to the State's use of peremptory strikes: Initially, the defendant must establish a *prima facie* showing that the State exercised its peremptory challenges on a basis of race. The burden then shifts to the State to articulate race-neutral explanations for its questioned strikes; the defendant may rebut these explanations. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful racial discrimination by the state. [*Batson,* 476 U.S. at 106, 106 S.Ct. at 1728.]" 866 S.W.2d 9, 23 (Tex.Cr. App.1993)

Appellant is caucasian. Veniremember Calvert is African–American. Prior to Calvert only three other African–American veniremembers were called for examination—two were successfully challenged for cause by appellant, the other was successfully challenged by the State.[3] The State used their ninth peremptory challenge on Calvert—the previous eight were used on non-African American veniremembers. After the State exercised its peremptory challenge, appellant objected, based upon Article 35.261 and *Batson.* See *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (white defendant can challenge a state's peremptory strike of a black veniremember);

---

**2.** Recently in *Butler v. State,* 872 S.W.2d 227, 246 (Tex.Cr.App.1994), we held Article 35.261 was inapplicable to capital cases. Therefore, we limit our analysis to appropriate state and federal constitutional considerations.

**3.** *Batson* challenges in our capital cases are necessarily problematic because the veniremembers

are examined and challenged individually. In this instance the *Batson* challenge occurred during voir dire, and therefore we limit our review of the *prima facie* showing to the available facts at the time of the trial court's ruling.

accord, *Mead v. State,* 819 S.W.2d 869, 870 (Tex.Cr.App.1991). The trial court determined appellant failed to meet his *prima facie* burden in this instance.

■ The policy of this Court in *Batson* challenges has been not to review a trial court's determination of whether the defendant has made a *prima facie* showing. *Dewberry v. State,* 776 S.W.2d 589, 591 (Tex.Cr. App.1989). Rather, we have avoided any rigid determinations for appellate review of such findings by trial courts. See *Dewberry v. State,* supra; *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981). However, in this instance the *prima facie* showing at the trial court was *only* that the State struck a member of an identifiable racial group.[4] This is not sufficient to meet a defendant's *prima facie* burden for purposes of *Batson.* See *United States v. Lewis,* 892 F.2d 735, 736 (8th Cir. 1989) ("While it is true that striking a black venireperson for racial reasons is always violative of the constitution, it is not true that all peremptory strikes of black venirepersons are for racial reasons."); *United States v. Young–Bey,* 893 F.2d 178, 180 (8th Cir.1990); *United States v. Ratcliff,* 806 F.2d 1253, 1256 (5th Cir.1986), cert. denied, 481 U.S. 1004, 107 S.Ct. 1625, 95 L.Ed.2d 199 (1987); *United States v. Dennis,* 804 F.2d 1208, 1211 (11th Cir.1986), cert. denied, 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987). Appellant's sixth point of error is overruled.

In points of error seven and twenty, appellant contends that allowing the State to use peremptory strikes against veniremembers who are opposed to the death penalty but are not excludable under *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), violates his Sixth and Fourteenth Amendment rights under the United States Constitution and his rights under Article I, Sections 10 and 15 of the Texas Constitution. Appellant "proffers no argument or authority as to the protection offered by the Texas Constitution or how that protection differs from the protection guaranteed by the U.S. Constitution. We decline to pursue appellant's Texas Constitutional arguments for him." *Johnson v. State,* 853 S.W.2d 527, 533 (Tex.Cr.App.1992); Tex.R.App.Proc. 74 and 210.

In support of his federal constitutional challenge, appellant cites to *Witherspoon* and its progeny. *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); *Gray v. Mississippi,* 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987). Appellant acknowledges the cases cited contemplate the State's use of a challenge for cause to eliminate veniremembers who are hesitant in sentencing a defendant to death. *Witherspoon,* 391 U.S. at 522, 88 S.Ct. at 1777; *Wainwright,* 469 U.S. at 424, 105 S.Ct. at 852; *Gray,* 481 U.S. at 657–658, 107 S.Ct. at 2051–2052. However, appellant contends this rule should be extended to peremptory challenges similar to the Supreme Court's decision in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We disagree.

We do not believe the Supreme Court intended to further restrict peremptory challenges in *Witherspoon* or its progeny. *Hernandez v. State,* 819 S.W.2d 806, 818–819 (Tex.Cr.App.1991), cert. denied, —— U.S. ——, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992). As Justice O'Connor stated in her opinion concurring to the denial of certiorari in *Brown v. North Carolina,* "[p]ermitting prosecutors to take into account the concerns expressed about capital punishment by prospective jurors, or any other factor, in exercising peremptory challenges simply does not implicate the concerns expressed in *Witherspoon.*" 479 U.S. 940, 941, 107 S.Ct. 423, 424, 93 L.Ed.2d 373 (1986) (O'Connor J., concurring); see also *Brown v. Dixon,* 891 F.2d 490, 496–498 (4th Cir.1989), cert. de-

---

**4.** During the *Batson* hearing appellant also argued the State causally challenged several African-American veniremembers. Initially we note the record indicates otherwise. However, *Bat-son* does not limit the State's right to challenge venirepersons for cause. *Tompkins v. State,* 774 S.W.2d 195, 200 n. 3 (Tex.Cr.App.1987).

nied, 495 U.S. 953, 110 S.Ct. 2220, 109 L.Ed.2d 545 (1990); *People v. Howard*, 147 Ill.2d 103, 167 Ill.Dec. 914, 927–928, 588 N.E.2d 1044, 1057–1058 (1991); *State v. Johnson*, 306 S.C. 119, 410 S.E.2d 547, 550 (1991), cert. denied, —— U.S. ——, 112 S.Ct. 1691, 118 L.Ed.2d 404 (1992); *State v. Brogden*, 329 N.C. 534, 407 S.E.2d 158, 166 (1991); *People v. Davis*, 794 P.2d 159, 208 (Col.1990), cert. denied, 498 U.S. 1018, 111 S.Ct. 662, 112 L.Ed.2d 656 (1991); *State v. Esparza*, 39 Ohio St.3d 8, 13, 529 N.E.2d 192, 198 (1988).

■ We hold the State's use of peremptory challenges to veniremembers who are against the death penalty does not violate the Sixth and Fourteenth Amendment of the United States Constitution. *Hernandez*, 819 S.W.2d at 818–819. Appellant's seventh and twentieth points of error are overruled.

■ In the eighth point of error, appellant contends the trial court improperly granted a State's challenge for cause against a potential juror. Veniremember Hodgkins was challenged for cause based on his inability to follow the law. See Article 35.16(b)(3), V.A.C.C.P. When reviewing the responses of a potential juror, we give great deference to the trial court's ruling. *Moody v. State*, 827 S.W.2d 875, 884 (Tex.Cr.App.), cert. denied, —— U.S. ——, 113 S.Ct. 119, 121 L.Ed.2d 75 (1992); *Felder v. State*, 758 S.W.2d 760, 766 (Tex.Cr.App.1988).

The following exchange is indicative of veniremember Hodgkins understanding of the burden of proof in this cause:

"STATE: Let me see if I am clear. You said before that if you heard evidence in a criminal case and it tipped the scales just a little bit in favor of the death that you didn't see any other way that you could go about making your decision with whether to vote guilty or not than to look at that. Did I misunderstand you?

"VENIREMEMBER: In saying what I said really, what I was simply saying—I guess, for some reason we are thinking different. If the evidence were put before me and if I saw that the evidence were more overbearing on one side than the other, I think I would lean that side, yes.

"STATE: Okay. And by lean that side, you mean you'd vote that way?

"VENIREMEMBER: If it appeared to me that a man was more innocent than guilty, I would vote innocent. If he was more than guilty than innocent, I would vote guilty."

After the State attempted to explain, to no avail, the differing burdens of proof in civil and criminal trials, the trial court also attempted and failed. Upon sustaining the State's objection to the potential juror, the trial court stated,

"I've had an opportunity to observe this juror, or have listened to his answers, I find that he did not—and I find beyond a reasonable doubt that he did not intentionally mislead or lie on his information sheets, that he simply did not understand the oath.[5] And I find after observation of this juror that he has sufficient difficult (sic) at the understanding the burden of proof and other legal issues which have been discussed and the challenge should be granted."

A review of the entire voir dire indicates the trial judge did not abuse her discretion in granting the State's challenge for cause. Appellant's eighth point of error is overruled.

■ In the ninth through thirteenth points of error, appellant complains the trial court erred in participating in the voir dire of specific veniremembers thereby depriving appellant effective assistance of counsel in intelligently exercising his peremptory

---

5. Veniremember Hodgkins did not answer a question on his juror information sheet pertaining to whether he had been previously arrested.

During voir dire, he admitted to a previous misdemeanor conviction for possession of marihua-

strikes.[6] Appellant's specific complaint concerning these five veniremembers is that the "cumulative effect of the court's interference with each of the jurors deprived appellant of effective assistance of counsel in intelligently exercising his peremptory challenges."

In points nine through twelve, appellant does not set forth any rulings by the trial court which restrict or prohibit him from asking the potential jurors any questions.[7] Absent such a showing nothing is preserved for review. *Jones v. State*, 843 S.W.2d 487, 494 (Tex.Cr.App.1992), cert. denied, — U.S. —, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993); Tex.R.App.P. 52(a).[8] Points nine through twelve are overruled.

■ In the thirteenth point of error, appellant argues the trial court gave the potential juror "a false impression of the relative abilities of the attorneys involved." After appellant objected to a State's question, the trial court requested that appellant clarify the objection. An exchange between the trial court and appellant occurred concerning whether moral culpability included guilt. The trial court requested appellant define "moral culpability." Eventually, this request became an order. Several times during the exchange the trial judge stated she did not understand appellant's objection. However, appellant's attorney refused to clarify his objection, at which point appellant's other attorney objected to the trial court's implication that they had improperly objected.

To preserve a complaint for our review to a trial objection, the party objecting must state the "specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context." Tex.R.App.Proc. 52(a). A trial court is permitted to request clarification of an objection at trial. Appellant's refusal or inability to clarify his objection for the trial court cannot be impugned upon the trial court creating reversible error. Appellant's thirteenth point of error is overruled.

■ In appellant's fourteenth point of error, he contends the trial court improperly granted the State's challenge for cause of veniremember Chandler in violation of *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). A veniremember may be challenged for cause when it is shown that his or her views on the death penalty would "prevent or substantially impair the performance of his or her duties in accordance with the oath taken and the trial judge's instructions." *Crane v. State*, 786 S.W.2d 338, 343 (Tex.Cr.App.1990) (quoting, *Wainwright v. Witt*, supra. "The trial court's ruling on a challenge for cause on this basis is reversible only if it was clearly an abuse of discretion." *Jones*, 843 S.W.2d at 497; *Goodwin v. State*, 799 S.W.2d 719, 731 (Tex.Cr.App.1990), cert. denied, 498 U.S. 1301, 111 S.Ct. 902, 112 L.Ed.2d 1026 (1991).

Veniremember Chandler evinced clear reservations about the death penalty. However, the trial court and prosecutor properly questioned the veniremember on how those feelings would affect her in following the law and

na and an arrest and charge for a terroristic threat.

6. Points nine through thirteen concern veniremembers Waites, Watson, Seibert, White, and Cannon, respectively. While not necessary to the disposition of this point of error, we note that Watson served on the jury, Seibert was successfully challenged for cause, and White was peremptorily challenged by the State.

7. The trial court participated in the voir dire to the extent that she instructed the potential jurors on points of law. For example, the judge instructed veniremember Waites that the defendant was presumed to be innocent; that veniremember Seibert *must* consider all evidence; that veniremember Watson was not to consider parole. Additionally during the voir dire of White,

concerning whether she believed there was a difference between intentional and deliberate, the court commented that her answer should be based on the definitions of those terms presented by counsel.

8. Appellant cites several examples in which the trial court instructed a potential juror on fine points of the law. For example, one juror initially stated that he would find a defendant guilty even though he had a reasonable doubt. The trial court instructed the juror that under the law he *is innocent until proven guilty beyond a reasonable doubt*. However, there is *no* ruling cited by appellant in which the trial court *restricted* questioning.

performing her duties as a juror in answering the special issues. Chandler stated that her feelings concerning the death penalty would "probably somewhat impair" her decision. The extent of the impairment was undefinable. But eventually the trial court asked:

"Would your feelings that you have, your reservations, if you heard evidence that convinced you beyond a reasonable doubt that the answer should be yes to [the special issues,] would your reservations, after you had thought it over very, very thoroughly and weighed everything, would your reservations cause you to tend to answer one of the questions no in this way?"

Veniremember Chandler answered the court, "If I'm honest, I'd probably say yes." Appellant attempted to rehabilitate Chandler.

"DEFENSE COUNSEL: Okay. And in inspecting the evidence harder, you're not saying that it would make you answer one of the questions that you have to answer against the evidence, are you?

"CHANDLER: I would probably be looking for reasons to lessen."

A considerable discussion ensued following a confusing set of answers and questions. Chandler stated that she originally believed that if she found a defendant guilty that she would be required to vote for the death penalty. After further voir dire Chandler stated that she would not automatically answer the special issues "no" merely to prevent the death penalty, but rather she would listen to the evidence. Chandler arguably may not have been challengeable for cause based upon her answers, because while she was opposed to the death penalty she stated she would answer the special issues based upon the evidence. See *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980); *Riley v. State*, 889 S.W.2d 290 (Tex. Cr.App.1993, rehearing granted).

However, our inquiry does not end here. The trial court was aware early on that appellant was entitled to an additional charge, a fourth special issue. The court would submit to the jury a special issue concerning whether the death sentence was appropriate in this case. See points of error seventeen and eighteen, *infra.* When asked what her answer to this question was by the court, Chandler responded that she did not "believe death is appropriate," and that feeling would cause her to answer that question "no." The trial court sustained the State's challenge and found that Chandler's views would substantially impair her performance as a juror.

Today, we are presented with a juror who, under our former caselaw and absent the fourth special issue, arguably would not have been challengeable for cause. For while Chandler was opposed to the death penalty she may have been able to follow the law. See *Adams,* supra; *Riley,* supra. However, as for the fourth special issue, Chandler stated in no uncertain terms that she believed morally that death was not appropriate and she would answer that question in the negative. Recently the Supreme Court stated that jurors "whether they be unalterably in favor of or opposed to the death penalty in every case—by definition are ones who cannot perform their duties in accordance with the law, their protestations notwithstanding." *Morgan v. Illinois,* —— U.S. ——, ——, 112 S.Ct. 2222, 2233, 119 L.Ed.2d 492 (1992). This is such a juror. The trial court did not abuse her discretion in granting the State's challenge for cause in this instance. Appellant's fourteenth point of error is overruled.

■ Appellant contends in his nineteenth point of error that the trial court deprived appellant of a qualified juror by giving a fourth special issue. This special issue essentially asked the jury to determine whether, considering mitigating evidence, the death sentence is appropriate. Specifically, appellant argues:

"that the trial court reinstated the problems found to be fatal in *Furman* [*v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) ] by making the infliction of death an unguided, arbitrary and

capricious decision of the jury. The extra special question is the only arguable decision of the jury under which Veniremember Chandler could have been excused and even then, the testimony did not support the removal by cause. [Appellant] was deprived of a key juror whose absence may have cost him his life. Without her being left on the panel, the jury became composed of those persons uncommonly willing to condemn a man to die. The improper excusal provided [appellant] 'a tribunal organized to return a verdict of death' in violation of *Witherspoon v. Illinois*, [391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) ]."

Appellant has forfeited any complaint on appeal concerning challenges for cause against jurors who would always answer the fourth special issue in the negative. Appellant's only objection to the charge as given was a general objection to the constitutionality of Article 37.071.[9] Appellant cannot argue, on the one hand, that the jury should be instructed upon the law in a certain manner throughout the trial, and on the other hand argue that a potential juror should not be disqualified for her inability to follow that portion of the law during voir dire. Accordingly, appellant's nineteenth point of error is overruled.

### III.

 In his fourth and fifth points of error, appellant contends the prosecutor improperly commented on appellant's failure to testify. There are four areas of permissible jury argument by the State: summation of the evidence, reasonable deduction from the

evidence, a response to an opponent's argument, and plea for law enforcement. *Hughes v. State*, 878 S.W.2d 142 (Tex.Cr.App.1993); *Gomez v. State*, 704 S.W.2d 770, 771 (Tex.Cr. App.1985). In the fourth point of error, appellant complains of the following State's jury argument:

> "Let's talk a little about intentional and what kind of actions we have. There's so many actions. We have to prove that this defendant's conduct is intentional. And that's what we have to prove as we told you on voir dire. Remember also on voir dire when we talked about intentional can be proved circumstantially, the legal term meaning that you don't have to have a person saying what he's going to do, you can't read another person's mind, but you can judge his intent."

The State contends this argument was proper as an explanation to the jury of circumstantial evidence.

 When addressing a complaint of improper comments on a defendant's failure to testify in his own behalf, we review the language from the standpoint of the jury. *Swallow v. State*, 829 S.W.2d 223, 225 (Tex. Cr.App.1992); *Koller v. State*, 518 S.W.2d 373, 375 (Tex.Cr.App.1975). The fact the language might be construed as an implied or indirect allusion to a defendant's failure to testify is not sufficient. *Swallow*, 829 S.W.2d at 225. "Language that can reasonably be construed to refer to a failure to present evidence other than from the defendant's own testimony does not amount to comment on failure to testify." *Ibid.*

Appellant contends the argument was a direct comment on appellant's failure to testi-

---

9. After the State objected to the submission of the fourth special issue during punishment, counsel for appellant stressed that throughout voir dire there was a belief by all parties that the charge would contain such a special issue. Appellant argued:

"Your Honor, the participation in this portion of the trial, up to this point, has all pointed toward doing it in this manner; There is no manner set out in the code as I previously pointed out by my objection. So, any manner that we agreed upon is extra-legislative as it were. But this is the manner that it was my

impression that we had all determined before we had started voir dire we would use.

"And since we have done it this way, and since we have voir dired in this manner, I feel that it would be improper to change at this point because, at the very least, we would confuse the jurors, and we have been—been able to adequately exercise our peremptory challenges because everything we did was based on what we have now in the charge."

The trial court then overruled the State's objection to the submission of the fourth special issue.

fy. See *Minton v. State*, 162 Tex.Crim. 358, 285 S.W.2d 760 (App.1956) ("We cannot open up that man's head and tell what was in his mind" amounts to an improper direct comment). However, we do not believe the argument complained of was necessarily a direct reference to appellant's failure to testify. From the jury's perspective the argument was directed to establish "intent" through the circumstantial evidence presented at trial. The State attempts to define circumstantial evidence of intent as evidence in which you can determine intent without knowledge of what the person thinks. While the State's definition or explanation of circumstantial evidence may be lacking, it does not rise to the level of an improper comment on appellant's failure to testify. Appellant's fourth point of error is overruled.

 In his fifth point of error, appellant contends the following prosecution argument was again an improper comment on appellant's failure to testify:

> "What we have here is not—not a suicide, not an—not intentional act, but an intentional, deliberate premeditated execution to the victim Bob Read. And then what kind of words of remorse do the testimony show this defendant made after this happened?"

The trial court overruled appellant's objection after a bench conference. The State argued they were not making a comment on appellant's failure to testify, but were speaking specifically of the testimony elicited during trial of appellant's first words to the arresting officers. This is further illustrated by the remaining portion of the State's argument on the subject:

> "What words are the first thing that we learned from the evidence and from the

testimony of the first words out of this defendant's mouth after executing Bob? Do you remember the remorseful words he said after he leaves Bob's body in the car bleeding and surely dead and runs to get away, what does he say when the cop put the gun and the flash light over the fence to stop him? Don't kill me, don't kill me. He sure is expecting a lot more from the police than he ever gave his victim, a lot more. And he's got it, because he's had a fair trial. And that's what we're all about here today."

We agree with the State that in its entirety the argument was not a reference to appellant's failure to testify, but rather his lack of remorse as seen through his single comment to the arresting officers. Appellant's fifth point of error is overruled.

### IV.

 In appellant's fifteenth point of error he complains the trial court erred in failing to instruct the venire of the definition of the term "reasonable doubt." Voir dire examination of potential jurors in capital cases is governed by Article 35.17, Section 2, V.A.C.C.P.[10] Appellant does not complain the trial court failed to question the venire concerning "beyond a reasonable doubt," but rather his complaint is that the court failed to instruct the venire on the definition of "beyond a reasonable doubt." Appellant argues he was unable to properly exercise peremptory challenges without an understanding of the potential juror's views of definitions of law.[11]

The objective of voir dire examination "is to cause to be assembled a competent, fair, impartial, and unprejudiced jury to judge the

---

10. Article 35.17, Section 2 provides,

"In a capital felony case, the court shall propound to the entire panel of prospective jurors questions concerning the principles, as applicable to the case on trial, of reasonable doubt, burden of proof, return of indictment by grand jury, presumption of innocence, and opinion. Then, on demand of the State or defendant, either is entitled to examine each juror on voir dire individually and apart form the entire

panel, and may further question the juror on the principles propounded by the court."

11. Appellant fails to illustrate that he was prevented from questioning the potential jurors on this subject. Absent such a showing nothing is preserved for review. *Jones*, 843 S.W.2d at 494; Tex.R.App. 52(a). Therefore, we need not reach the propriety of this portion of appellant's argument.

facts of the case." *Yanez v. State,* 677 S.W.2d 62, 65 (Tex.Cr.App.1984). This is accomplished in question and answer format. However, the venire is *not* presented with the exact law which it will follow until the conclusion of the trial. Our statutory scheme has provided that the court's charge setting out the applicable law is presented to the jury *after* they have heard the evidence and before jury argument. Article 36.14, V.A.C.C.P. In so far as appellant complains of any questions by the State which may have confused particular veniremembers, the proper remedy was to object to the State's question at that time. Tex.R.App.Pro. 52(a).

■ We hold that nothing in Article 35.17 *requires* a trial court to define terms for the venire. Therefore, a trial court does not abuse its discretion in refusing to instruct the venire upon a definition of a legal term at the request of either party. See *Robertson v. State,* 871 S.W.2d 701, 711 (Tex.Cr.App.1993) ("Because the evidence has not been heard [during voir dire], it is not an abuse of discretion for a trial court to deny a request prior to voir dire, to decide upon the type of charge to be given at punishment.") Appellant's fifteenth point of error is overruled.

V.

■ In his sixteenth point of error, appellant contends the trial court erred in refusing an instruction to the jury which would have required them to exclude every other reasonable hypothesis except appellant's guilt. However, no instruction was required. *Hankins v. State,* 646 S.W.2d 191, 199–200 (Tex.Cr.App.1981) (opinion on rehearing). Appellant's sixteenth point of error is overruled.

■ In point of error seventeen and eighteen, appellant contends the jury was not given a proper jury instruction on how to apply mitigating evidence offered during trial in violation of *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). In addition to the statutory special issues, the trial court gave the jury the following fourth special issue:

> "Do you find from the evidence beyond a reasonable doubt, after considering all mitigating evidence, if any thereby, and considering the defendant's level of culpability, character and background and the circumstances of the offense, that the penalty of death is the appropriate punishment?"

The jury answered the question in the affirmative. This "fourth special issue" is sufficient to meet the commands of *Penry. State v. McPherson,* 851 S.W.2d 846, 847–850 (Tex. Cr.App.1992). Appellant's seventeenth and eighteenth points of error are overruled.

Accordingly, appellant's sentence and judgment are affirmed.

CLINTON, J., dissents.

BAIRD, Judge, concurring.

For the following reasons, I concur in the resolution of points of error six, fourteen and nineteen.

I.

■ In point of error six appellant contends the State's peremptory strike of veniremember Calvert was racially motivated. After both parties and the trial judge questioned Calvert, the State exercised a peremptory strike. Appellant objected, contending the State struck Calvert because she was black.[1] The trial judge held "... I'll find that the prima facie case has been made, so, we'll hear the explanations."[2] The State responded the strike was not racially moti-

---

1. The record reveals three black veniremembers were successfully challenged for cause prior to the voir dire of Calvert. Calvert was the only remaining black on the venire. Consequently, by striking Calvert, the State struck 100% of the black veniremembers.

2. The State objected to the trial judge's ruling contending appellant failed to make a prima facie case. The trial judge sustained the State's objection, but stated "... I want to hear the reason anyway."

vated and provided twelve race-neutral reasons for the strike.[3] The trial judge overruled appellant's objection.[4] Appellant now contends that ruling was erroneous.

The exclusion of any person from jury service on the basis of race is prohibited. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *See also, Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *and,* Tex.Code Crim. Proc.Ann. art. 35.261. Once a defendant has objected to the State's use of a peremptory strike and made a prima facie showing of racial discrimination,

> ... the burden then shifts to the attorney representing the state to give a racially neutral explanation for the challenges. The burden of persuasion remains with the defendant to establish purposeful discrimination.

Tex.Code Crim.Proc.Ann. art. 35.261.

The plurality refuses to reach the merits of the sixth point of error but instead summarily overrules the point.

The policy of this Court in *Batson* challenges has been not to review a trial court's determination of whether the defendant has made a *prima facie* showing. *Dewberry v. State,* 776 S.W.2d 589, 591 (Tex.Cr.App.1989). Rather, we have avoided any rigid determinations for appellate review of such findings by trial courts.... However, in this instance the *prima facie* showing at the trial court was *only* that the State struck a member of an identifiable racial group. This is not sufficient to meet a defendant's *prima facie* burden for purposes of *Batson.* ... Appellant's sixth point of error is overruled. As the plurality recognizes, we do not review the determination of a prima facie showing of discrimination when race-neutral reasons for the peremptory strike(s) are articulated. In *Dewberry v. State,* 776 S.W.2d 589 (Tex.Cr. App.1989), we stated:

> The question of whether a defendant has established a prima facie case is normally not a concern for appellate review.... *Where the [State] has done everything that would be required of [it] if the [defendant] had properly made out a prima facie case, whether the [defendant] really did so is no longer relevant.*

*Id.,* 776 S.W.2d at 591, n. 2 (Internal quotation marks omitted). (Emphasis in original.) Further, in *Hill v. State,* 827 S.W.2d 860 (Tex.Cr.App.1992), we stated:

> ... the policy of this Court, like that of the United States Supreme Court, is that *we will not review the issue of whether the defendant established a prima facie case where the prosecutor has articulated his reasons for the challenged peremptory strike* and the trial court has ruled on the ultimate questions of intentional discrimination.[5]

*Id.,* 827 S.W.2d at 865. The plurality offers no reason or justification for its decision to deviate from this established policy. The plurality opinion will only serve to confuse what was previously a settled area of law.

The record is sufficient to address the merits of this point of error. None of the

---

**3.** The State recited the following reasons for the strike: 1) Calvert held a general opposition to the death penalty; 2) Calvert demonstrated an inability to answer direct and clear questions; 3) Calvert expressed displeasure with the trial judge's decision to sequester the jury during trial; 4) Calvert had a nervous demeanor throughout voir dire; 5) Calvert demonstrated an inability to understand or follow the law; 6) Calvert's employer had a son currently representing a criminal defendant charged with capital murder; 7) Calvert was unable to articulate when, in her opinion, the death penalty was appropriate; 8) although Calvert was employed in a restaurant, she expressed no feelings about a capital murder committed in a restaurant; 9) Calvert was hesitant when questioned concerning the use of an

intentional act to support a conviction for capital murder and sentence of death; 10) the State unsuccessfully challenged Calvert for cause; 11) Calvert equated the terms "intentional" and "deliberate"; and, 12) Calvert appeared to be weak willed and "unable to maintain any opinion in the face of the questioning or challenge."

**4.** The trial judge found the fifth and seventh reasons were not supported by the record. *See* n. 3., *supra.*

**5.** All emphasis is supplied unless otherwise indicated.

State's explanations indicate that Calvert was struck on the basis of race. The State's first explanation dealt with Calvert's general opposition to capital punishment. Although Calvert stated that if selected she would follow her oath and the law and render a verdict based upon the evidence, she further indicated that if she were a legislator voting on the propriety of capital punishment she would vote against it. These comments "present the precise situation where a peremptory challenge is appropriate, *viz:* the prospective juror is not challengeable for cause, but the prosecutor does not believe the venireperson will be [a] favorable juror for the State." *Mines v. State,* 852 S.W.2d 941, 946 (Tex.Cr.App.1992). Because the ruling of the trial judge is not clearly erroneous, see, *Hill,* 827 S.W.2d at 865; *Williams v. State,* 804 S.W.2d 95, 101 (Tex.Cr.App.1991); and *Whitsey v. State,* 796 S.W.2d 707, 726 (Tex.Cr.App.1989) (opinion on rehearing), I concur in the disposition of appellant's sixth point of error.

## II.

Appellant's fourteenth and nineteenth points of error dramatically illustrate the confusion that has arisen in capital jurisprudence since *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). Further, these points of error raise two valid concerns over the application of *Penry:* 1) whether *Penry* should be used to exclude jurors who, under *Adams* and *Wainwright,* are otherwise qualified to serve; and, 2) whether the uncontrolled discretion denounced in *Furman* is now sanctioned by the requirement of a *Penry* vehicle.

### A. A Constitutional Capital Sentencing Scheme

In *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (decided in conjunction with *Branch v. Texas* ), the Supreme Court held the Texas capital sentencing scheme allowed uncontrolled discretion, was overly broad and unconstitutional under the Eighth Amendment. The Legislature responded to *Furman* by enacting Tex.Code Crim.Proc.Ann. art. 37.071, narrowing the class of persons subject to capital punishment and providing for the assessment of capital punishment based upon the jury's response to statutory punishment issues.[6] This capital sentencing scheme passed constitutional muster in *Jurek v. Texas,* 428 U.S. 262, 276, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 (1976).

The first successful constitutional challenge to art. 37.071 occurred in *Penry* where mitigating evidence was presented that Penry was mentally retarded and suffered from organic brain damage resulting in poor impulse control and the inability to learn from experience. Further evidence was presented that Penry was abused as a child. The Supreme Court found the jury was unable to give effect to Penry's mitigating evidence through the statutory punishment issues and held art. 37.071 was unconstitutional *as applied.*

*Penry* teaches that, in order to pass Constitutional muster, a capital sentencing scheme must provide the jury with a vehicle to "consider and give effect to mitigating evidence relevant to a defendant's character or record or the circumstances of the offense." *Penry,* 492 U.S. at 319, 109 S.Ct. at 2946. We have judicially approved two such vehicles. In *State v. McPherson,* 851 S.W.2d 846 (Tex.Cr.App.1992), we approved the use of an additional punishment issue allowing the jury to determine if "the death penalty is a reasoned moral response to the Defen-

---

6. Before a sentence of death was imposed, Tex. Code Crim.Proc.Ann. art. 37.071(b) required the jury to unanimously answer the following punishment issues in the affirmative:

 (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

 (2) whether there is a probability that the defendant would commit criminal acts of vio-

lence that would constitute a continuing threat to society; and

 (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

Acts 1973, 63rd Leg., p. 1125, ch. 426, art. 3, § 1, eff. June 14, 1973.

dant's background, his character, and to the crime of which he was convicted." *Id.*, 851 S.W.2d at 850. In *Fuller v. State*, 829 S.W.2d 191 (Tex.Cr.App.1992), we approved an instruction permitting the jury to nullify its affirmative answer to one of the statutory punishment issues if the mitigating evidence demonstrated a life sentence was appropriate. *Id.*, 829 S.W.2d at 209.

In 1991, the Legislature responded to *Penry* by amending art. 37.071 and requiring the jury to answer the following statutory punishment issue:

> Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

Tex.Code Crim.Proc.Ann. art. 37.071(2)(e).

## B. Juror Qualifications in a Capital Case

After *Jurek*, an issue arose concerning whether a veniremember, opposed to capital punishment, was disqualified to serve on a capital jury. Tex.Penal Code Ann. § 12.31(b) provided for the exclusion of any juror who would be *affected* by the mandatory penalty of death or life imprisonment for those convicted of capital murder.[7] However, the Supreme Court held the operation of § 12.31(b) impermissibly excluded qualified jurors. *Adams v. Texas*, 448 U.S. 38, 49, 100 S.Ct. 2521, 2528, 65 L.Ed.2d 581 (1980). The Court stated:

> ... Nor in our view would the Constitution permit the exclusion of jurors from the penalty phase of a Texas murder trial *if*

they aver that they will honestly find the facts and answer the questions in the affirmative if they are convinced beyond a reasonable doubt, but not otherwise, yet who frankly conceded that the prospects of the death penalty may affect what their honest judgment of the facts will be or what they may deem to be a reasonable doubt.

*Adams*, 448 U.S. at 50, 100 S.Ct. at 2529. The Court reaffirmed *Adams* in *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), holding:

> We therefore take this opportunity to ... reaffirm the ... standard from *Adams* as the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment. That standard is *whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."*

*Id.*, 469 U.S. at 424, 105 S.Ct. at 852.

## C. *Adams* and *Wainwright v. Penry*

While the capital punishment issues that arose in *Adams* and *Wainwright* would appear to be settled, the instant case questions the continued viability of those cases after *Penry*. Veniremember Chandler expressed her general opposition to capital punishment but stated she could set aside those feelings and decide appellant's case in accordance with her oath and the trial judge's instructions. Accordingly, under *Adams* and *Wainwright*, Chandler was qualified to serve on appellant's jury. Indeed, the State concedes Chandler's general opposition to capital punishment would not have prevented or substantially impaired the performance of her duties in accordance with art. 37.071(b). However, *Penry* effectively changed the law

---

7. Tex.Penal Code Ann. § 12.31 stated:
 Prospective jurors shall be informed that a sentence of life imprisonment or death is mandatory on conviction of a capital felony. A prospective juror shall be disqualified from serving as a juror unless he states under oath that the mandatory penalty of death or imprisonment for life will not affect his deliberations on any issue or fact.
 Acts 1973, 63rd Leg., p. 1124, ch. 426, art. 2, § 2, eff. Jan. 1, 1974. Partially repealed September 1, 1991.

by requiring a vehicle.[8] In the instant case, the trial judge stated the *Penry* vehicle would be in the form of an additional punishment issue allowing the jury to consider and give effect to any mitigating evidence. The State questioned whether Chandler's opposition to capital punishment would impair her ability to render a verdict on that additional issue. Chandler stated her opposition to capital punishment would cause her to answer the additional issue in such a way as to avoid the imposition of death. The trial judge sustained the State's challenge for cause.

The *Wainwright* Court was unequivocal in holding that a juror, generally opposed to capital punishment but true to her oath and the trial judge's instructions was qualified to serve on a capital jury. Yet today we see *Penry* used as a means to disqualify such a juror. When two decisions of our nation's highest court conflict, which shall we follow?

That we need guidance in this area cannot be disputed. With almost four hundred inmates on death row, we struggle daily with the application and interpretation of *Penry*. In the five years since *Penry*, we have been asked to determine: when a *Penry* claim is preserved;[9] what is *Penry* evidence;[10] when a *Penry* vehicle is required;[11] and what vehicle is sufficient.[12] Yet in the same five years the Supreme Court has addressed *Penry* only on two occasions. In *Johnson v. Texas*, —— U.S. ——, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993), the Supreme Court determined that evidence of youth can be given effect under the statutory punishment issues. The Court instructed that *Penry* does not require that the jury be able to consider mitigating evidence "in every conceivable manner in which the evidence might be relevant," only that the jury have "room for independent judgment in reaching its decision." *Id.*, —— U.S. at ——, 113 S.Ct. at 2660.

In *Graham v. Collins*, 506 U.S. ——, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993), the Court never reached the merits of Graham's contentions that mitigating evidence of youth, acts of kindness, religious devotion, redeeming character traits and a troubled family background were beyond the scope art. 37.071(b). However, in dictum, the Court stated:

> We do not read *Penry* as effecting a sea change in this Court's view of the constitutionality of the ... Texas death penalty statute; it does *not* broadly suggest the invalidity of the special issues framework. Indeed, any such reading of *Penry* would be inconsistent with the Court's conclusion in that case that it was not announcing a "new rule" within the meaning of *Teague v. Lane*, [489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)] ....

*Graham*, 506 U.S. at ——, 113 S.Ct. at 894.

---

**8.** Appellant's trial was conducted in March, 1991. On September 1, 1991, the legislatively created *Penry* issue became mandatory. *See*, art. 37.071(e). Prior to September 1, 1991, the trial judge determined whether a *Penry* vehicle was required. That decision was subject to appellate review.

**9.** *See e.g.*, *Black v. State*, 816 S.W.2d 350, 369 (Tex.Cr.App.1991); *Selvage v. Collins*, 816 S.W.2d 390 (Tex.Cr.App.1991); *and, Ex parte Kelly*, 832 S.W.2d 44 (Tex.Cr.App.1992).

**10.** *See e.g.*, *James v. State*, 805 S.W.2d 415, 417 (Tex.Cr.App.1990); *Gribble v. State*, 808 S.W.2d 65, 76 (Tex.Cr.App.1990); *Ex parte Ellis*, 810 S.W.2d 208, 212 (Tex.Cr.App.1991); *Ex parte Baldree*, 810 S.W.2d 213 (Tex.Cr.App.1991); *Lewis v. State*, 815 S.W.2d 560, 567 (Tex.Cr.App. 1991); *Trevino v. State*, 815 S.W.2d 592, 621 (Tex.Cr.App.1991); *Ramirez v. State*, 815 S.W.2d 636, 656 (Tex.Cr.App.1991); *Black v. State*, 816 S.W.2d 350, 365, 369 (Tex.Cr.App.1991); *Ex parte Goodman*, 816 S.W.2d 383 (Tex.Cr.App. 1991); *Ex parte Herrera*, 819 S.W.2d 528 (Tex.Cr. App.1991); *Ex parte Rogers*, 819 S.W.2d 533, 534 (Tex.Cr.App.1991); *Joiner v. State*, 825 S.W.2d 701, 707 (Tex.Cr.App.1992); *and, First v. State*, 846 S.W.2d 836, 842 (Tex.Cr.App.1992).

**11.** *See e.g.*, *Lackey v. State*, 819 S.W.2d 111 (Tex. Cr.App.1991) (opinion on reh'g); *Goss v. State*, 826 S.W.2d 162 (Tex.Cr.App.1992); *Nobles v. State*, 843 S.W.2d 503 (Tex.Cr.App.1992); *Mines v. State*, 852 S.W.2d 941 (Tex.Cr.App.1992); *and, Richardson v. State*, 879 S.W.2d 874 (Tex.Cr.App. 1993).

**12.** *See*, *State v. McPherson*, 851 S.W.2d 846 (Tex. Cr.App.1992); *Fuller v. State*, 829 S.W.2d 191 (Tex.Cr.App.1992); *and, Rios v. State*, 846 S.W.2d 310 (Tex.Cr.App.1992).

And we still do not know the ultimate impact of *Penry* and its progeny.[13]

### D. *Furman v. Penry*

Furthermore, appellant contends that *Penry* now allows the jury the same uncontrolled discretion forbidden by *Furman*. This is a proposition with which Justice Thomas agrees. In his concurring opinion in *Graham*, Justice Thomas stated:

> ... Whatever contribution to rationality and consistency we made in *Furman*, we have taken back with *Penry*. In the process, we have upset the careful balance that Texas had achieved through the use of its special issues.

\* \* \* \* \* \*

> *Penry* reintroduces the very risks that we had sought to eliminate through the simple directive that States in all events provide rational standards for capital sentencing. For 20 years, we have acknowledged the relationship between undirected jury discretion and the danger of discriminatory sentencing—a danger we have held to be inconsistent with the Eighth Amendment. When a single holding does so much violence to so many of this Court's settled precedents in an area of fundamental constitutional law, it cannot command the force of *stare decisis*. In my view, *Penry* should be overruled.

*Graham*, 506 U.S. at ——, 113 S.Ct. at 911, 913 (Thomas, J., concurring).

Although I do not agree that *Penry* should be overruled, I can sympathize with Justice Thomas. I do not believe the Supreme Court anticipated the broad effect *Penry* would have on capital jurisprudence or the difficulties state courts would face in its application. I can only hope the Supreme Court will recognize the confusing and difficult constitutional path it has created in capital jurisprudence.

When the opinions of the Supreme Court are conflicting or inconsistent, our only course is to apply the holdings of the most recent opinion and await further guidance. Because the plurality follows that course I concur in the resolution of appellant's fourteenth and nineteenth points of error.

With these comments, I join the judgment of the Court.

OVERSTREET and MALONEY, JJ., join this opinion.

MILLER and CAMPBELL, JJ., join *only* Part I of this opinion and otherwise join the judgment of the Court.

**13.** In seven separate death penalty cases, the Supreme Court recently granted petitions for certiorari, vacated our judgments and remanded each case to this Court for consideration in light of *Johnson, supra. See, Mines v. Texas,* —— U.S. ——, 114 S.Ct. 42, 126 L.Ed.2d 13 (1993); *Earhart v. Texas,* —— U.S. ——, 113 S.Ct. 3026, 125 L.Ed.2d 715 (1993); *Granviel v. Texas,* —— U.S. —— , 113 S.Ct. 3027, 125 L.Ed.2d 715 (1993); *Hawkins v. Texas,* —— U.S. ——, 113 S.Ct. 3029, 125 L.Ed.2d 718 (1993); *Lucas v. State,* —— U.S. ——, 113 S.Ct. 3029, 125 L.Ed.2d 717 (1993); *Richardson v. Texas,* —— U.S. ——, 113 S.Ct. 3026, 125 L.Ed.2d 715 (1993); *and, Zimmerman v. Texas,* —— U.S. ——, 114 S.Ct. 374, 126 L.Ed.2d 324 (1993).