IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. WR-37,034-02






EX PARTE STEVEN KENNETH STALEY, Applicant








ON APPLICATION FOR A WRIT OF HABEAS CORPUS


FROM TARRANT COUNTY






 Price, J., filed a statement dissenting to the dismissal of the application, in
which Holcomb, J., joined.



S T A T E M E N T




 The applicant filed a subsequent application for a writ of habeas corpus seeking
relief from his capital murder sentence on the basis that the mitigation instruction
submitted to the jury in his case violated the Eighth Amendment to the United States
Constitution. The majority concludes that the applicant has not met the requirements of
Article 11.071 Section 5. Because I disagree with the majority's conclusion, I
respectfully dissent.

 Under the circumstances of this case, Article 11.071 requires that the applicant
present sufficient specific facts establishing that the claim is cognizable and was legally
unavailable. The majority disposes of the application by dismissing it on the basis that
the applicant has not met section 5. It concludes that the jury in this case was not
presented with the same nullification problem as the jury in Penry II. (1)

 There is no functional difference between the instruction given in this case and the
instructions that the Supreme Court held to be unconstitutional in Penry II. The jury was
instructed to render a true verdict and was also instructed to change its true verdict under
certain circumstances. The trial court submitted to the jury a mitigation question. 

 Do you find from the evidence beyond a reasonable doubt, after considering
all mitigating evidence, if any there be, and considering the defendants level
of culpability, character and background and the circumstances of the
offense, that the penalty of death is an appropriate punishment?

The jury was instructed that if it answered the mitigation question no, it should cross out
its yes answer to special issue number one and write no. It was also instructed that if it
could not reach a verdict on the mitigation question, it should also cross out its answer to
special issue 1. (2)

 The fact that the jury answered the mitigation question yes does not end the
inquiry. During voir dire, the State explained the process to the venire members. Here is
an example of an exchange between the State and one of the venire members:

 [State] And then after you consider all this evidence, the Court
will tell you that if you believe from all the evidence
that the mitigating evidence--the stuff that you think,
it in your own mind, lessens the [appellant's] personal
moral culpability, you think there's enough of that, that
you believe that he should be spared the death penalty,
even though you've decided the answer to all these
questions is yes, that you would be instructed that you
were then under an obligation to answer two [sic] or
more of the questions no.


 [Answer] To be instructed to answer them no?


 [State] Yes. Because you would believe that the personal, moral
culpability of the [appellant] of the defendant was lessened by
this mitigating evidence that you had heard to the point where,
in this case, that he deserved the death penalty, okay?


 [Answer] Okay.

 [State] And under the circumstances, then, you would be told to
answer one or more of those questions no, even though by the
explicit terms the answer was yes. And you see the result of
answering it no if ten or more of you agreed that the answer
was no would be life instead of death. Do you see that?


 [Answer] That's right.

Venire members were told that they would be required, under certain circumstances, to
change their true verdict on one or more of the special issues if they found that the
mitigating evidence warranted a sentence other than death. The seeds of the internally
inconsistent jury charge were planted during voir dire.

 One conclusion that we can reach is that the jury reached its answer to the
mitigation question because it gave effect to its reasoned moral response to the evidence. 
This is not the only conclusion we can reach based on this record. It is also possible that
the jurors answered the mitigation yes to avoid violating its oath to render a true verdict. 
We cannot know. Under these circumstances, we cannot be reasonably certain that the
nullification problem never came into play.

 In this case, the majority does not address whether the claim was legally
unavailable or whether the claim was procedurally defaulted, but I address these questions
in the interest of a full hearing of the applicant's claims. The applicant claims that Penry
II was unavailable when he filed his initial application under Article 11.071. His initial
application was filed on October 14, 1997. The Supreme Court delivered Penry II in
2001. By the time the applicant filed his initial application, we had held that jury
nullification instructions met the constitutional requirements announced by the Supreme
Court in Penry I. (3)

 In fact, the applicant raised this claim on direct appeal, though it was not directly
addressed in our opinion affirming his conviction. In his brief on direct appeal, the
appellant argued that the trial court erred in submitting the mitigation question to the jury.

 The trial court in this case concocted an instruction which instructs the jury
to ignore their oath and answer a submitted question falsely if they want to
show mercy. The instruction is irrational and contradictory but better than
nothing in the charge to guide the jury's consideration. . . . Although it was
a noble attempt at judicial legislation, the instruction failed to allow
meaningful consideration of the factor's in [the appellant's] trial.

In response to this argument, we said only that, "The jury answered the question in the
affirmative. This 'fourth special issue' is sufficient to meet the commands of Penry." (4) 
The claim was presented before, and we summarily disposed of it because we did not
have the benefit of Penry II.

 The State claims that the applicant procedurally defaulted his claim because his
trial counsel did not object to the jury charge on this basis at trial. First, I would say that
this was not an issue in Ex parte Smith (5) to the majority of this Court. Although the
concurring judges would have ruled on this basis, the majority addressed the merits of the
claim. (6) Also, the fact that Smith did not object at trial was not considered by the United
States Supreme Court when it granted relief. (7)

 Moreover, the State's objection to the charge made the trial court aware of the
problem with the charge. One of the main purposes of a timely and specific objection is
to make the trial court aware of the objection so that it may rule on it. (8) That purpose was
satisfied in this case.

 I want to make one final point. I have no doubt that the trial court in this case was
trying to make the best of a bad situation. The Supreme Court had delivered Penry I, but
the legislature had not yet provided for a procedure to incorporate the requirements of the
decision. And at the time, Article 37.071 required the trial court to impose a death
sentence if the jury answered the special issues in a certain way. There was no room for
the trial court to simply add another question without also directing the jury to change its
answer to one of the special issues. The trial court was definitely caught between a rock
and a hard spot. I think we can all agree that the trial court did its best under these
difficult circumstances. 

 I disagree with the majority's conclusion that the applicant has not met the
requirements of Article 11.071, Section 5. I respectfully dissent.


Filed: April 27, 2005.

Publish.
1. Penry v. Johnson, 532 U.S. 782 (2001).
2. It is not relevant that the instructions may have been more favorable to the applicant in
some aspects. The only relevant question for our purposes is whether the instructions caused the
applicant to be sentenced in violation of the Eighth Amendment.
3. Fuller v. State, 829 S.W.2d 191, 209 (Tex. Crim. App. 1992), cert. denied 508 U.S. 941
(1993).
4. Staley v. State, 887 S.W.2d 885, 897 (Tex. Crim. App. 1994).
5. Ex parte Smith, 132 S.W.3d 407, 417 (Tex. Crim. App. 2004).
6. Ibid. (Hervey, J., concurring); id., at 428 (Holcomb, J., concurring).
7. See Smith v. Texas, 125 S. Ct. 400 (2004).
8. Garza v. State, 126 S.W.3d 79, 82 (Tex. Crim. App. 2004).