TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00419-CR







Wayne Michael Bousquet, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0971484, HONORABLE TOM BLACKWELL, JUDGE PRESIDING








 Appellant Wayne Michael Bousquet appeals from his conviction for murder. See Tex.
Penal Code Ann. § 19.02(b) (West 1994). The trial court assessed appellant's punishment at
imprisonment for forty years. Appellant asserts that the evidence is neither legally nor factually sufficient
to support the jury's verdict. We will affirm the trial court's judgment.

 In reviewing the legal sufficiency of the evidence, the test is whether, after viewing the
evidence in the light most favorable to the prosecution, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319
(1979); Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996); Staley v. State, 887 S.W.2d
885, 888 (Tex. Crim. App. 1994); Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). 
This standard of review is the same for both direct and circumstantial evidence. Geesa v. State, 820
S.W.2d 154, 162 (Tex. Crim. App. 1991); Mack v. State, 859 S.W.2d 526, 527 (Tex. App.--Houston
[1st Dist.] 1993, no pet.). 

 Appellant contends that there is only scant circumstantial evidence implicating him and that
it cannot be found sufficient to support his conviction for the murder of his common-law wife, Donna
Bousquet. He argues that the victim, also known as Donna Van Slyke, committed suicide.

 The evidence shows appellant dominated Donna and that she was afraid of him. They
previously lived at the Salvation Army shelter, but on June 8, 1996, they were living at the Bel Air Motel,
a "rundown motel" in South Austin. At about 2:10 a.m. that morning, Austin Police Officer William Hanson
was dispatched to the Bel Air Motel to investigate a reported suicide. Appellant was on the motel parking
lot and directed Officer Hanson to the motel room where he and his wife were living. "She was laying in
the doorway itself and you couldn't open the door any more than . . . about a foot and a half. Her eyes
were open. She had a fixed stare. . . . She was nude."

 Austin Emergency Medical Service and Fire Department units came to the motel in
response to a 911 call. Paramedics found that the victim had no motor response, no blood pressure, and
she was not breathing. The victim could not be resuscitated. There was no change in the victim's condition
from the time the emergency units reached the motel until the time she was pronounced dead, as a result
of the stab wounds.


 Appellant told Officer Hanson that he and his wife had been arguing about "rent and some
other money matters, and that she went into the restroom. When she came out, she had a knife and
stabbed herself two times." Appellant explained that he and his wife went nude while in their room. He
had dressed to go make a 911 call for help. Officer Hanson noticed "a splotch of blood" on appellant's
chest where his shirt was unbuttoned.

 Rodney Lee lived next door to appellant and his wife for approximately two months. Lee
testified that "just about every night" he heard yelling and screaming coming from Bousquets' room. 
Appellant yelled at his wife all the time "at the top of his lungs." Appellant's wife was friendly when
appellant was not around, but in his presence she appeared nervous, afraid, and did not talk much. Lee
testified that one to two weeks before her death the victim was upset and ran from the motel. She and
appellant had been fighting. She was afraid to return to their motel room while appellant was there. Three
days before her death, Lee had a conversation with appellant about his wife. Appellant, who had been
drinking, said his wife was keeping him from his friends, that "he was tired of her shit," and that "he just had
to get rid of her." On the night of the victim's death, Lee heard appellant hollering; it was a "very angry
holler." Appellant was screaming. "I'm tired of your shit, you fucking bitch." At 1:00 a.m., Lee could still
hear appellant yelling. Lee was later awakened by police officers who asked him what had happened at
the Bousquets. Lee told the police what he had heard and then went "downtown and made a statement
on it." 

 Melissa Bumpus knew Donna Bousquet while they were both living at the Salvation Army
shelter. Bumpus once overheard a conversation between appellant and Donna. Donna told appellant she
was going to leave him. Appellant responded that if she did he would kill her. If he couldn't have her no
one would. Donna then cried. On two occasions, Bumpus observed bruises on Donna's back and arm. 
In both instances, appellant referred to the bruises on Donna as his "handiwork." On May 20, 1996,
Bumpus saw Donna run into a Salvation Army building. She was crying and trembling. She carried a duffel
bag with her belongings. Appellant had packed the bag and put it outside of their motel room. Donna and
appellant had been fighting and appellant told her not to come back to the motel. Donna was seeking
shelter at the Salvation Army because she was afraid appellant would kill her. Bumpus testified that on that
occasion Donna predicted she would be dead in two weeks.

 No blood stains were found on the telephone where appellant made the 911 call. Blood
stains were found on the inside of appellant's shirt and pants and on the outside of his shoes. DNA tests
showed that blood stains consistent with the victim's blood were found inside appellant's pants, on the knife
found in the bathroom sink, droplets on the carpet, stains on the front door, and on a shower curtain found
behind the bathroom door.

 At the motel, before appellant was arrested, Detective Manuel Fuentes explained to
appellant that he would need to make a statement about what had happened. Appellant told Fuentes that
the police were going to put him in jail for the rest of his life. Fuentes asked appellant why he said that. 
Appellant responded, "you know." 

 Travis County Deputy Medical Examiner Dr. Elizabeth Peacock performed an autopsy on
the victim's body. The victim sustained two stab wounds in the anterior chest. One stab wound went
"entirely through the heart" and the other went all the way through the sternum and the pericardium and
touched the outside of the victim's heart. Dr. Peacock testified that it would have taken great force to
penetrate the sternum bone. It was possible but not likely that these wounds were self inflicted. There
were no "hesitation wounds" such as are common to self-inflicted wounds. Dr. Peacock testified that
stabbing was not a common method of suicide. She had never seen a suicide with a stab wound through
the sternum. She testified it would be difficult to get the leverage necessary to go through the bone. The
victim's stab wounds were directed downward whereas suicidal stab wounds usually go straight in. The
victim had a finger wound, possibly a defensive wound; she also had a scalp contusion that was inflicted
before her heart stopped beating. The victim's blood and vitreous fluids tested negative for alcohol. Dr.
Peacock concluded that the cause of the victim's death was the stab wound that went through her heart. 
She testified that the two stab wounds were consistent with someone other than the victim using his or her
right hand to inflict the wounds. Dr. Peacock ruled the victim's death a homicide.

 There was no evidence to show that anyone other than appellant and the victim was in the
room when the victim sustained her fatal wounds. The weapon suspected of being used to inflict the
victim's wounds was the knife found in the bathroom sink. Only appellant's fingerprints were found on that
knife.

 Dr. Russell Bach, a physician and psychiatrist, testified he had never heard of anyone
committing suicide by stabbing herself in the sternum. He testified it would be incredibly painful and require
a great deal of force.

 When the evidence is viewed in the light most favorable to the jury's verdict, the evidence
is sufficient for the jury as the trier of fact rationally to find that all of the elements of the offense were
proved beyond a reasonable doubt. We hold the evidence is legally sufficient to support the jury's verdict. 
Appellant's first point of error is overruled.

 In reviewing factual sufficiency of the evidence we view all the evidence without the prism
of "in the light most favorable to the prosecution"; we set aside the jury's verdict only if it is so contrary to
the overwhelming weight of the evidence as to be clearly wrong and unjust. See Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996). Clewis approved this standard of review first articulated in
Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd untimely filed). More recently
the Court of Criminal Appeals has admonished "We emphasize that in performing a factual sufficiency
review, the courts of appeals are required to give deference to the jury verdict, examine all of the evidence
impartially, and set aside the jury verdict 'only if it is so contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust.'" Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997)
(quoting Clewis, 922 S.W.2d at 129); see Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996);
Santellan v. State, 939 S.W.2d 155, 164-65 (Tex. Crim. App. 1997).

 We summarize the additional evidence necessary to determine factual sufficiency. 
Appellant argues the importance of a note found in the victim's personal effects that "referenced suicidal
ideations." A backpack found in the motel room contained magazines and papers. Among the papers
were "counseling sheets" bearing the name Donna C. Bousquet; they were dated 1/2/96. Appearing on
that sheet were the words "Who am I? List five positive traits that you can describe in one word: Being
Happy. Having a job. My baby Uellen, loving Wayne, sometimes suicide." 

 Appellant told officers that Donna had previously attempted to commit suicide by cutting
"a big cross between her titties" with a razor and by slitting her wrists. Dr. Peacock testified that when she
performed the autopsy on the victim's body, she found no scars or evidence on the victim's breast or wrists
showing she had attempted to commit suicide.

 Appellant kept telling the investigating officers that before her injuries the victim had been
drinking. However, the autopsy revealed no alcohol in the victim's body. Appellant also told the
investigating officers that Donna was "manic" and "bipolar." Dr. Bach, the psychiatrist, testified that he had
treated Donna in February 1995. She was depressed and she was afraid of Wayne Bousquet, her
common-law husband. Dr. Bach determined that at that time Donna was upset and "scared about what
was going on in her life," but she was not suicidal, manic, or bipolar. Bach's diagnosis was that Donna was
having marital problems. He urged her to go to the Battered Women's Center. In February 1996, Dr.
Bach again saw Donna. At that time she was not suicidal. He warned her that appellant was likely to
continue being abusive toward her.

 We have applied the standard of review required by Cain, Clewis, and Stone; after
examining all of the evidence impartially and giving deference to the jury's verdict, we conclude that the
jury's verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong or
unjust. We hold that the evidence is factually sufficient as well as legally sufficient to support the jury's
verdict and overrule appellant's second point of error.


 The trial court's judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Powers, Aboussie and Dally*

Affirmed

Filed: July 30, 1998

Do Not Publish














* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. See Tex.
Gov't Code Ann. § 74.003(b) (West 1988).



6). Clewis approved this standard of review first articulated in
Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd untimely filed). More recently
the Court of Criminal Appeals has admonished "We emphasize that in performing a factual sufficiency
review, the courts of appeals are required to give deference to the jury verdict, examine all of the evidence
impartially, and set aside the jury verdict 'only if it is so contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust.'" Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997)
(quoting Clewis, 922 S.W.2d at 129); see Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996);
Santellan v. State, 939 S.W.2d 155, 164-65 (Tex. Crim. App. 1997).

 We summarize the additional evidence necessary to determine factual sufficiency. 
Appellant argues the importance of a note found in the victim's personal effects that "referenced suicidal
ideations." A backpack found in the motel room contained magazines and papers. Among the papers
were "counseling sheets" bearing the name Donna C. Bousquet; they were dated 1/2/96. Appearing on
that sheet were the words "Who am I? List five positive traits that you can describe in one word: Being
Happy. Having a job. My baby Uellen, loving Wayne, sometimes suicide." 

 Appellant told officers that Donna had previously attempted to commit suicide by cutting
"a big cross between her titties" with a razor and by slitting her wrists. Dr. Peacock testified that when she
performed the autopsy on the victim's body, she found no scars or evidence on the victim's breast or wrists
showing she had attempted to commit suicide.

 Appellant kept telling the investigating officers that before her injuries the victim had been
drinking. However, the autopsy revealed no alcohol in the victim's body. Appellant also told the
investigating officers that Donna was "manic" and "bipolar." Dr. Bach, the psychiatrist, testified that he had
treated Donna in February 1995. She was depressed and she was afraid of Wayne Bousquet, her
common-law husband. Dr. Bach determined that at that time Donna was upset and "scared about what
was going on in her life," but she was not suicidal, manic, or bipolar. Bach's diagnosis was that Donna was
having marital problems. He urged her to go to the Battered Women's Center. In February 1996, Dr.
Bach again saw Donna. At that time she was not suicidal. He warned her that appellant was likely to
continue being abusive toward her.

 We have applied the standard of review required by Cain, Clewis, and Stone; after
examining all of the evidence impartially and giving deference to the jury's verdict, we conclude that the
jury's verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong or
unjust. We hold that the evidence is factually sufficient as well as legally sufficient to support the jury's
verdict and overrule appellant's second point of error.


 The trial court's judgment is affirmed.