TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00710-CR






Timothy Smith, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NO. 0980717, HONORABLE BOB PERKINS, JUDGE PRESIDING







 A jury found appellant Timothy Smith guilty of murder in the first degree by use
of a deadly weapon and assessed punishment at imprisonment for twenty years. See Tex. Penal
Code Ann. § 19.02(b)(1), (2) (West 1994). Smith asserts six points of error, including complaints
that the evidence was factually and legally insufficient to support his conviction, that the trial court
erred in admitting victim-impact evidence, and that the trial court erred in limiting cross-examination of two witnesses. Smith also asks that this court abate the appeal and return it to the
trial court for a hearing on his motion for new trial. We will overrule these points of error and
affirm.


FACTUAL BACKGROUND

 On August 19, 1997, Police Officer Ronald G. Russell responded to a 911 call and
found Eric Hayes dead on the kitchen floor of Timothy Smith's duplex. Hayes died of multiple
gunshot wounds to the abdomen, right temple, and left temple. Smith admitted shooting Hayes
but asserted self-defense at trial.

 In Smith's first rendition of what happened, he told the 911 operator that Hayes
came into his house with scissors. Smith said that when Hayes first showed up, he "acted all cool
like everything was all right. And then the next thing I know he had a big scissors like turned on
me."

 At the scene Smith recounted a slightly different version of the evening's events
to Officer Steve Barnes. Smith told Barnes that he and Hayes ate dinner together; after dinner
Smith asked Hayes to leave and retired upstairs. Later Smith said he heard a noise and ran
downstairs. He said he encountered Hayes with the scissors "straight up" in his hand. Smith then
picked up a gun, that he said was on the table in the kitchen, and shot Hayes.

 Smith testified in his own defense at trial and gave a third version of the fatal event. 
He indicated that he was upstairs when he heard a noise. He said he grabbed the gun his wife
kept on the bedside table and went downstairs. According to Smith's trial testimony, Hayes
yelled, "Well, what's this thing about you and Robert," and then lunged at Smith with a big pair
of scissors. At that point Smith shot Hayes. When Hayes lunged at him again, Smith shot him
two more times. On cross-examination Smith amended his story and stated that after the first
shot, Hayes "kind of turned to the side and turned back," instead of lunging a second time.

 Smith's version about the sequence of the attack and the shooting was disputed at
trial. The 911 operator testified that she heard a gunshot fired once during Smith's call. The
State's expert witness testified that the sound on the 911 recording was consistent with that of a
gunshot. Finally, homicide detective Mark Gilchrist testified that the bleeding pattern from
Hayes' wounds indicated that he had been shot in the abdomen after he was already on the
ground. 

 Smith's surprise at Hayes' alleged scissor attack on him was also disputed at trial. 
Smith testified that he told his neighbor's sons that night that he was scared of Eric Hayes and "if
they heard anything . . . to come over, because I was sure that he wasn't going to do anything
with people around. I felt more safe with people around." However, the younger neighbor, who
was fifteen at the time of the shooting, testified that Smith told them, "If you do want to see
someone get killed, then come by tonight." The older son, seventeen at the time, confirmed that
Smith invited the brothers to his place to "see somebody get shot."

 At trial Smith pleaded self-defense, maintaining that Hayes had attacked him. The
scissors were found in Hayes' hand, and Smith introduced an expert witness who testified that the
physical evidence supported Smith's story. However, Smith also testified that after he shot Hayes
and turned on the kitchen light, he noticed the scissors beside the victim's knee, and that he picked
up the scissors and put them in Hayes' hand before calling 911. Smith did not tell Officer Barnes
that night that he had put the scissors in Hayes' hand.


DISCUSSION

Sufficiency of Evidence

 In Smith's first and second points of error, he contends that the evidence was
legally and factually insufficient to support the jury's failure to find that Smith acted in self-defense when he shot Hayes. To consider the legal sufficiency of the evidence to support a
criminal conviction, we review all the evidence in the light most favorable to the verdict to
determine if any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Staley v. State,
887 S.W.2d 885, 888 (Tex. Crim. App. 1994). Any inconsistencies in the evidence should be
resolved in favor of the verdict. See Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App.
1988). This standard of review is the same for both direct and circumstantial evidence. See
Green v. State, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992).

 When conducting a factual-sufficiency review, we do not view the evidence in the
light most favorable to the verdict. Instead, we consider all evidence equally, including the
testimony of defense witnesses and the existence of alternative hypotheses. See Orona v. State,
836 S.W.2d 319, 321 (Tex. App.--Austin 1992, no pet.). The court, however, does not substitute
its judgment for that of the jury and should set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. See Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996). Furthermore, the appellate court may not reverse a
jury's decision simply because it disagrees with the result. See Cain v. State, 958 S.W.2d 404,
407 (Tex. Crim. App. 1997).

 In discussing the sufficiency of evidence, we first deal with Smith's contention that
by presenting no evidence regarding the self-defense issue the State failed to meet its burden to
prove beyond a reasonable doubt that he did not act in self-defense. Smith relies on Saxton v.
State, 804 S.W.2d 910 (Tex. Crim. App. 1991). That case held that although the State bears a
burden of persuasion it does not bear a burden of production when defensive evidence is admitted. 
See id. at 913. Therefore, "we determine whether after viewing all the evidence in the light most
favorable to the prosecution, any rational trier of fact . . . would have found against appellant on
the self-defense issue beyond a reasonable doubt." Id. at 914.

 The jury heard three versions of the events from Smith himself. In each version,
Smith's description of Hayes' attack was different: in one account Hayes and Smith were together
and Hayes was acting "cool" shortly before the attack; in another Smith ran downstairs after
hearing a noise and confronted Hayes. In his second version of his story, the gun Smith used to
shoot Hayes was on the kitchen table. At trial Smith testified that the gun he used to kill Hayes
was on his upstairs bedside table. Smith described to the jury his careful placement of the scissors
in the dead victim's hand, a premeditated effort to support his story of self-defense. Smith's
neighbors told the jury that Smith invited them to come watch somebody be shot that evening.

 Smith argues that in determining whether he acted in self-defense, the focus should
be on what he knew or experienced during the event in question. Smith relies on evidence that
the scissors were in Hayes' hand and his own testimony that Hayes attacked him. He also
presented evidence to establish Hayes' mental instability. Hayes' former roommate, Robert
Duvall Campbell, testified that Hayes was arrested for assaulting him and after the arrest, Hayes
threatened to burn down his house or physically hurt him. Hayes, in phone calls to Campbell,
also threatened to burn down Smith's house, do harm to his wife at her place of employment, or
to physically hurt both of them. Smith's wife testified that Hayes had once threatened to commit
suicide.

 Assuming that this is the proper perspective for the jury to take in considering the
evidence, the jury was entitled to find that Smith's alleged fear of Hayes was neither reasonable
nor believable. Smith testified that he and Hayes had a sociable evening eating dinner together
just hours before the fatal shooting. Smith admitted that after he shot Hayes he placed the scissors
"back in his hand" before he called 911, which the jury could infer was a pretense to advance his
defensive theory. Smith's neighbors testified that Smith visited them three times that night; the
brothers came over to Smith's side of the duplex once. Smith told them if they wanted to see
"someone get shot" to come back over. One brother described Smith as "pretty anxious to do it"
and said that Smith thought watching someone get shot "would be cool." Based on this evidence,
we hold that a rational jury could have found beyond a reasonable doubt against Smith on his
claim of self-defense. Having reviewed all of the evidence, we cannot say that the jury's failure
to find Smith acted in self-defense is so contrary to the overwhelming weight of evidence as to be
clearly wrong and unjust. Smith's first and second points of error are overruled.


Victim-Impact Testimony

 Smith next asserts that the trial court erred in admitting victim-impact testimony
from the victim's brothers because it was irrelevant and more prejudicial than probative. At trial,
Smith only objected to the brothers' testimony as hearsay. Therefore, Smith has failed to preserve
his complaint that their statements were irrelevant and prejudicial. See Tex. R. App. P. 33.1 (to
preserve complaint for appellate review, record must show objection was timely made to trial
court and trial court ruled or refused to rule on objection). Smith's third point of error is
overruled.

Limitation of Cross-Examination

 In his fifth and sixth points of error Smith argues that the trial court impermissibly
limited his cross-examination of his neighbor Larry Campbell and Campbell's son. (1) Cross-examination is one of the rights conferred by the United States Constitution's Confrontation
Clause. See Lagrone v. State, 942 S.W.2d 602, 613 (Tex. Crim. App. 1997). "However, the
trial court also maintains broad discretion to impose reasonable limits on cross-examination . . .
." Id. An appellate court may reverse a trial court's decision to limit cross-examination only
when it appears that the court applied an erroneous legal standard, or when no reasonable view
of the record could support the trial court's decision. See Dubose v. State, 915 S.W.2d 493, 497-98 (Tex. Crim. App. 1996). Even if the appellate court would have reached a different result,
it should not intercede as long as the trial court's ruling was within the "zone of reasonable
disagreement." Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on
reh'g).

 Smith does not contend that the court applied an erroneous legal standard. Smith
argues in his fifth point of error that he would have cross-examined Larry Campbell and his older
son to give the jury "an accurate and true picture of the Campbell home" in order to counter the
State's testimony that Larry Campbell distrusted and feared Smith. Larry Campbell testified that
he tried to discourage his sons from associating with Smith because "he usually had a beer can
in his hand" and "drank on a daily basis." Campbell said Smith's language and the topics he
talked about were "not good material for teenage boys."

 Smith states he would have questioned Larry Campbell about the older son's
chronic tardiness and absenteeism from school, the son's use of alcohol, and his expulsion from
school for selling controlled substances. Smith argued this evidence was relevant because the
State "has led the jury to believe that Mr. Campbell is protecting his innocent children from bad
influences." In ruling that this evidence was not relevant and therefore inadmissible, the trial
judge said that Campbell's testimony to the jury reflected typical parental concern, whether or not
his children had ever been in trouble. We agree with the trial judge that the behavior of
Campbell's sons was not relevant to this case. Smith's fifth point of error is overruled.

 Smith says in his sixth point of error that he would have cross-examined the older
son about his getting caught drinking beer in the woods, selling controlled substances at school,
and missing significant amounts of school. Although Smith claims that this evidence was offered
to prove the witness's bias, at trial Smith argued that this evidence was offered to impeach Larry
Campbell who had created an impression that these "were good boys and that they didn't do
wrong, and to support Smith's testimony that the son had sold him marihuana on the night that
Hayes was killed. The trial judge sustained the State's rule 608(b) objection but allowed limited
questions about the son's educational status. The court also allowed Smith to ask the son whether
he sold Smith marihuana that night. Texas Rule of Evidence 608(b) prevents cross-examination
into specific instances of a witness's conduct for the purpose of attacking or supporting his
credibility. (2) See Tex. R. Evid. 608(b). Rule 608(b), "by its terms, is very restrictive." Ramirez
v. State, 802 S.W.2d 674, 676 (Tex. Crim. App. 1990). The trial judge reiterated that Larry
Campbell's testimony did not create an impression that his sons were innocent. We believe these
matters were well within the trial court's discretion. That he allowed the son to be questioned
about his educational status and his alleged sale of marihuana is evidence that the judge was
balancing Smith's right of cross-examination against the restrictions imposed by rule 608(b). 
Smith's sixth point of error is overruled.


Motion for New Trial

 Finally, Smith contends in his fourth point of error that we should abate this appeal
and remand the cause to the trial court for a hearing on his motion for new trial. Smith said his
motion for new trial contained eleven matters extrinsic to the record to support the motion. In
his brief to this court, Smith summarized his allegations as involving "bench conferences, the trial
judge's 'tone,' an ex parte conference on the case between the trial judge and the prosecutor, and
the prosecutor's obstructionist and deceiving manners during discovery." 

 The State first argues that although Smith timely filed his motion for new trial, it
was not timely presented as required by Rule 21.6. See Tex. R. App. P. 21.6. The term
"present" as used in Texas Rule of Appellate Procedure 31(c)(1), the predecessor to current Rule
21.6, "means the record must show the movant for a new trial sustained the burden of actually
delivering the motion for new trial to the trial court or otherwise bringing the motion to the
attention or actual notice of the trial court." Caranza v. State, 960 S.W.2d 76, 79 (Tex. Crim.
App. 1998).

 Smith, by way of affidavits attached to his appellate brief, maintains that the motion
was delivered to the trial judge's coordinator/assistant and that this satisfied the presentment
requirement. We agree that delivery to the court coordinator is effective to satisfy the
presentment requirement. See Butler v. State, 6 S.W.3d 636, 641 (Tex. App.--Houston [1st Dist.]
1999, no pet. h.). The legislature established the position of court coordinator so that judges
could "improve justice and expedite the processing of cases through the courts." Tex. Gov't
Code Ann. § 74.101 (West 1988); see also Butler, 6 S.W.3d at 641. Requiring the defendant's
attorney to present the motion for new trial to the trial judge personally would unduly tax busy
judges without serving any legitimate purpose. See Butler, 6 S.W.3d at 641.

 However, the State argues that this Court cannot rely on affidavits attached to a
brief because they are not a part of the appellate record. Alternatively, the State contends that the
affidavits do not aver or contain competent evidence to show that the administrative assistant
actually informed the trial judge about Smith's motion for new trial. Finally, the State asserts that
even if appellant timely presented his motion for new trial, the court did not abuse its discretion
by failing to hold a hearing because neither the motion for new trial nor the accompanying
affidavits allege reasonable grounds for granting a new trial. See Jordan v. State, 883 S.W.2d
664, 665 (Tex. Crim. App. 1994). Because the facts alleged by Smith are not sufficient to compel
a hearing, this Court will presume presentment without deciding whether the affidavits are part
of the appellate record or contain the proper averments regarding presentment.

 A trial court abuses its discretion in failing to hold a hearing when the defendant
asserts reasonable grounds--not determinable from the record--for granting a new trial. See id;
Reyes v. State, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993). "The purpose of the hearing is
for a defendant to fully develop the issues raised in a motion for new trial." Butler, 6 S.W.3d at
642.

 At oral argument Smith focused on two particular grounds that entitled him to a
hearing: (1) that the trial judge and the prosecutor had an ex parte conversation concerning the
case and the record, and (2) that the objection to the instruction on provocation in the jury charge
was not reflected in the record. First, the affidavit submitted by Smith fails to show how the ex
parte conversation affected the jury's verdict or in any other way entitled him to a new trial. In
Jordan, the court held that an affidavit asserting ineffective assistance of trial counsel was
"conclusory in nature" because it failed to allege facts that counsel did not properly investigate
the facts and failed to subpoena two witnesses. See Jordan, 883 S.W.2d at 665. Therefore, the
motion for new trial "was not sufficient to put the trial judge on notice that reasonable grounds
existed to believe counsel's representation may have been ineffective." Id. Similarly, the
allegation here that the trial judge and prosecutor engaged in an ex parte conversation, without
more, is conclusory and insufficient to support a motion for new trial. Second, Smith waived
error by not preserving in the record an objection to the instruction on provocation. See Tex. R.
App. P. 33.1.

 Further, we believe that all eleven of Smith's points could have been preserved on
the record. By failing to preserve the issues, Smith waived error and cannot now claim these
matters are "extrinsic to the record." In Butler, the defendant alleged that among other points,
witnesses fabricated testimony. See 6 S.W.3d at 643. The court held that the "[a]ppellant either
complains about matters that he could . . . object to at trial, or he suggests that evidence was
fabricated without explaining why he could not have known of these alleged fabrications at trial." 
Id. Here, for example, Smith complains of the trial judge's animus toward Smith's trial counsel
during bench conferences and his assistance to the prosecutor during voir dire. All of the
additional grounds urged in support of a new trial involved similar action by the trial judge that
Smith's counsel could have preserved on the record during the proceedings. Much like the
fabricated testimony in Butler, Smith complains in his motion about matters that he should have
dealt with on the record during the trial. Therefore, we decline to abate the appeal and deny
Smith's request that we remand to the trial court for a hearing on the motion for new trial.


CONCLUSION

 We hold that the evidence was legally and factually sufficient to support the jury's
failure to find that Smith acted in self-defense. We overrule all other issues complained of on
appeal and affirm the trial court's judgment of conviction.



 


 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: March 23, 2000

Do Not Publish
1. Larry Campbell lived on the other side of Smith's duplex and is the father of the two
brothers whose testimony was addressed supra. Larry Campbell and his sons are not related to
Eric Hayes' former roommate Robert Campbell, who also testified at trial.
2. At the time of the trial Texas Rule of Criminal Evidence 608(b) governed. Tex. R. Crim.
Evid. 608(b), 11 Tex. Reg. 554 (1985).



ther the motion for new trial nor the accompanying
affidavits allege reasonable grounds for granting a new trial. See Jordan v. State, 883 S.W.2d
664, 665 (Tex. Crim. App. 1994). Because the facts alleged by Smith are not sufficient to compel
a hearing, this Court will presume presentment without deciding whether the affidavits are part
of the appellate record or contain the proper averments regarding presentment.

 A trial court abuses its discretion in failing to hold a hearing when the defendant
asserts reasonable grounds--not determinable from the record--for granting a new trial. See id;
Reyes v. State, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993). "The purpose of the hearing is
for a defendant to fully develop the issues raised in a motion for new trial." Butler, 6 S.W.3d at
642.

 At oral argument Smith focused on two particular grounds that entitled him to a
hearing: (1) that the trial judge and the prosecutor had an ex parte conversation concerning the
case and the record, and (2) that the objection to the instruction on provocation in the jury charge
was not reflected in the record. First, the affidavit submitted by Smith fails to show how the ex
parte conversation affected the jury's verdict or in any other way entitled him to a new trial. In
Jordan, the court held that an affidavit asserting ineffective assistance of trial counsel was
"conclusory in nature" because it failed to allege facts that counsel did not properly investigate
the facts and failed to subpoena two witnesses. See Jordan, 883 S.W.2d at 665. Therefore, the
motion for new trial "was not sufficient to put the trial judge on notice that reasonable grounds
existed to believe counsel's representation may have been ineffective." Id. Similarly, the
allegation here that the trial judge and prosecutor engaged in an ex parte conversation, without
more, is conclusory and insufficient to support a motion for new trial. Second, Smith waived
error by not preserving in the record an objection to the instruction on provocation. See Tex. R.
App. P. 33.1.

 Further, we believe that all eleven of Smith's points could have been preserved on
the record. By failing to preserve the issues, Smith waived error and cannot now claim these
matters are "extrinsic to the record." In Butler, the defendant alleged that among other points,
witnesses fabricated testimony. See 6 S.W.3d at 643. The court held that the "[a]ppellant either
complains about matters that he could . . . object to at trial, or he suggests that evidence was
fabricated without explaining why he could not have known of these alleged fabrications at trial." 
Id. Here, for example, Smith complains of the trial judge's animus toward Smith's trial counsel
during bench conferences and his assistance to the prosecutor during voir dire. All of the
additional grounds urged in support of a new trial involved similar action by the trial judge that
Smith's counsel could have preserved on the record during the proceedings. Much like the
fabricated testimony in Butler, Smith complains in his motion about matters that he should have
dealt with on the record during the trial. Therefore, we decline to abate the appeal and deny
Smith's request that we remand to the trial court for a hearing on the motion for new trial.


CONCLUSION

 We hold that the evidence was legally and factually sufficient to support the jury's
failure to find that Smith acted in self-defense. We overrule all other issues complained of on
appeal and affirm the trial court's judgment of conviction.



 


 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: March 23, 2000

Do Not Publish
1. Larry Campbell lived on the other side of Smith's duplex and is the father of the two
brothers whose testimony was addressed supra. Larry Campbell and his sons are not related to
Eric Ha