# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00372-CR

**Damacio Renteria, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH DISTRICT COURT
### NO. 0992095, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

A jury convicted Damacio Renteria of burglary of a habitation. After finding an enhancement paragraph to be true, the jury assessed punishment at twenty years in prison. Renteria contends on appeal that, although the evidence shows he committed trespass, it is legally insufficient to show that he attempted to commit or did commit theft. We will affirm the judgment.

Kevin Weatherill returned from a weekend in Houston to find his home ransacked and many belongings taken. Sometime over the weekend, a window in the bedroom had been broken. There was blood inside the broken window and throughout the house. A soup can was on the floor and a vase was misplaced on the nearby bed. Mud was tracked throughout the house in a way that indicated many people were in the house over the weekend. Items missing from the house included an assault rifle, several rounds of ammunition for the rifle, a shotgun, a rifle, dive knives, jewelry (including a ring, a pearl necklace, a diamond tennis bracelet, and trinket jewelry), guitars, a camera, a video-cassette recorder, and bottles of wine and rum (consumed on premises).

The television appeared to have been moved, but abandoned. Other valuable items left in the house included a computer, art work, several wetsuits, and a compact-disc player.

Weatherill testified that he persuaded police to conduct a crime-scene investigation. He said that the officers who initially responded told him they did not normally look for fingerprints in such cases, so he called 911 again and requested that someone come out and take fingerprints. The burglary unit found several fingerprints and palm prints in the house.

Weatherill said that he became suspicious of Renteria two days after discovering the robbery. He said that, as he was moving out of the house, Renteria was standing outside an adjacent housing project and apparently taunting him. Weatherill called police, who matched Renteria's palm prints to those found on the interior of the broken bedroom window and on the vase in the bedroom. None of the other prints in the house matched Renteria's prints, and police did not compare the non-matching prints to those of other suspects. Renteria had a cut on his chest, which he ascribed to an attempt to remove a tattoo with a razor blade. A witness testified that the cut could have been made by barbed wire; Weatherill's house was surrounded by a fence topped by barbed wire.

A defense witness who lived in the adjacent housing project testified that, in April 1999, a man other than Renteria came to his apartment around three in the morning asking if he wanted to buy some goods stolen from the house. The items offered included an assault weapon, some furniture, some jewelry, and some clothes.

When reviewing the legal sufficiency of the evidence, we look at all the evidence in the light most favorable to the prosecution and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S.

2

307, 318-19 (1979); *Staley v. State*, 887 S.W.2d 885, 888 (Tex. Crim. App. 1994). Any inconsistencies in the evidence should be resolved in favor of the verdict. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App . 1988). This standard of review is the same for both direct and circumstantial evidence. *See Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992).

The district court charged the jury that a person commits an offense if, without the effective consent of the owner, the person enters a habitation and commits or attempts to commit a theft. *See* Tex. Penal Code Ann. § 30.02(a)(3) (West Supp. 2001). Renteria concedes that his prints show that he was inside the house. The direct evidence is that Renteria did not have the consent of Weatherill, the owner, to enter the house and remove items.[1] None of the stolen items, however, was recovered, much less tied to Renteria. The only evidence regarding the disposition of the items after the burglary was the reported attempt by a man other than Renteria to sell some of the items.

Renteria argues that the lack of evidence tying him to the items or his presence to the specific time of the theft renders the evidence legally insufficient to support his conviction. He points to the fact that many people entered the house during the burglary weekend. He reiterates his trial argument that the "burglary" was an insurance scam, arguing that "[t]he idea that a successful businessman would move into a 600 sq. ft. house located next to the crime-ridden Meadowbrook Housing Project and keep thousands of dollars worth of items in that small house is ridiculous." He notes that a television and other items "valuable to a common burglar" were left in the house.

Viewing the evidence in the light most favorable to the verdict, we conclude that the jury reasonably could have disbelieved Renteria's assertion that he was in the house but did not steal

---

[1] Though Weatherill was renting the house, he is an "owner" because he had a right to possession superior to Renteria. *See* Tex. Penal Code Ann. § 1.07(a)(35)(A) (West 1994).

or attempt to steal any of Weatherill's missing property. The court of criminal appeals upheld a murder conviction based on two fingerprints inside a house. *See Phelps v. State*, 594 S.W.2d 434, 438 (Tex. Crim. App. 1980). The court wrote that

> appellant's fingerprints were found on a doorjamb of the bedroom closet approximately six feet from where the intruder was seen crouching. The door through which the intruder entered the bedroom was located approximately three feet to the right of the doorjamb where appellant's fingerprints were found. The bedroom dresser from which the intruder took a camera was located approximately seven feet to the left of this doorjamb. The most direct route between the bedroom door and the bedroom dresser would have taken the intruder right by the bedroom closet. The deceased's wife testified that she had not given appellant permission to enter her home. There was no evidence that appellant had been on the premises prior to the offense, or that the premises previously had been burglarized. These circumstances negate any reasonable probability that appellant left his fingerprints prior to the night of the offense.

*Id.* at 436 (citations omitted). In this case, the only evidence was that Renteria did not have permission to be in the house at any time. His palm print was found on the broken window and on a vase misplaced nearby. Blood was found in the house (though not matched or distinguished from Renteria's blood); Renteria had a cut on his chest that could have come from either the barbed wire surrounding the house or the broken window glass. Many items were missing from the house.

The jury reasonably could disregard evidence and inferences that Renteria asserts should have led to his acquittal. The jury could believe that others participated in the theft and still conclude that Renteria participated in the theft or attempted theft. The jury could accept evidence that Weatherill moved to a "bad neighborhood," did not fit the demographics of the neighborhood, was somewhat cavalier about storing his belongings, and purchased a replacement-value insurance policy which increased his recovery on his post-theft insurance claim, and still find that he did not consent to Renteria taking his property. There is, however, no evidence that Weatherill conspired

4

to commit or consented to the theft in order to liquidate personal property. The jury could instead have viewed Weatherill's move to a small, inexpensive house as a cost-saving measure. Viewed favorably to the verdict, Weatherill's insistence on a more extensive investigation involving dusting for fingerprints and the burglars' abandonment of the television run counter to his involvement in the robbery. The jury could conclude that a man involved in a scam would prefer minimal investigation and maximal "loss" from the theft; demanding fingerprints and leaving items valuable to a "common burglar" seem antithetical to such preferences. Absent consent to removal of the property, the removal is theft; moving to a "bad neighborhood" and buying an insurance policy does not constitute consent to be the victim of crime.

Though the jury could have acquitted Renteria of burglary, it did not. It heard all the evidence (including alleged inconsistencies in Weatherill's testimony) and convicted Renteria of burglary. Viewing the evidence most favorably to the verdict, we conclude that a rational jury could have found the essential elements of the crime beyond a reasonable doubt. We overrule the sole point of error and affirm the judgment.

_____

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed: August 9, 2001

5

Do Not Publish