# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00409-CR

**Jenetta Shawnta Coleman, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 6 OF TRAVIS COUNTY
### NO. 525183, HONORABLE JAN BRELAND, JUDGE PRESIDING

Appellant Jenetta Shawnta Coleman appeals a judgment of conviction for Class B misdemeanor theft. *See* Tex. Penal Code Ann. § 31.03(e)(2)(A)(i) (West Supp. 2001). After a jury found appellant guilty, the trial court sentenced her to 100 days confinement. We will affirm the conviction.

## BACKGROUND

On February 6, 1999, appellant went to an Albertson's grocery store with her sister and daughter. In the film department, appellant picked up between eight and ten packages of processed film and told store supervisor Yolanda Morales, who was working behind the film counter, that she would pay for the film at the store pharmacy. Because of the large amount of film involved, Morales notified manager Angela Lee that appellant had picked up, but not yet paid for, the film.

Morales identified appellant to Lee and allegedly told Lee to watch appellant and make sure she paid for the film.

After completing her shopping, appellant approached a check-out counter, where Lee helped appellant unload her grocery basket and place the groceries on the turntable. Lee testified that while she was helping unload appellant's groceries, she saw the packages of film in appellant's shopping cart. Once all the items were totaled, appellant realized that she did not have enough money to pay; in order to lower the total bill, appellant requested that the cashier void certain items. Testimony varies as to whether appellant paid for some or none of the film. According to appellant, some of the film packages were checked-out and paid for while some remained in the upper basket where appellant's daughter was sitting. According to Lee, "Coleman purchased no pictures at the checkout." Appellant asserts that she then asked the cashier if she could go to her car to get more money, apparently to pay for the remaining groceries, to which the cashier allegedly replied, "That's okay. Go ahead."

Appellant proceeded to the parking lot with her sister and daughter, where she unloaded the groceries into the trunk of her sister's car and put her daughter in the rear car seat. Testimony varies as to whether appellant was getting into the driver's side or passenger's side of the car when Lee, Morales, and another Albertson's store manager approached appellant and asked to see her receipt for the film. Appellant could not produce a receipt for the photos.

The store employees consequently accompanied appellant back into the store where they called the police. Appellant apologized and asked the management not to press charges. Appellant was arrested for shoplifting and charged with Class B misdemeanor theft. *Id*. On April 26,

2

2000, a jury found her guilty. The trial court assessed punishment and sentenced appellant to 100 days' confinement in the Travis County jail. In four points of error, appellant now appeals the judgment of conviction.

## DISCUSSION

In her first point of error, appellant argues that the trial court erred in overruling her objection to the State's opening statement.

During the State's opening, the prosecuting attorney summarized what the State's evidence would show and began to make the statement: "I anticipate that the defense will make something of the fact that the cashier at the front grocery checkout --." Defense counsel, however, interrupted the prosecutor and objected on the basis that the State was "making argument by surmising what [defense counsel's] argument [was] going to be and preempting that argument." The trial court overruled the objection and the prosecutor proceeded as follows:

> Thank you, your Honor. The evidence will show that there are thefts in this store, as in many grocery stores, pretty frequently and that this is not the first theft that the witnesses that you'll meet today and tomorrow have observed. You'll also learn from the evidence that an individual employee is not assigned to a specific checkout point, that they revolved around, and so there is not a way at this point to know who, in fact, was the cashier who checked [appellant] out for the items that she did buy at the -- the grocery items that she did purchase.

Appellant specifically argues that the trial court erred in overruling her objection because the prosecutor's statement (1) constituted jury argument that undermined the defense theory that appellant had consent to go to her car with the unpaid packages of film and (2) shifted the burden of proof to the defense on the issue of appellant's intent to deprive.

3

In order to prove incurable jury argument, a complainant must prove (1) an improper argument was made, (2) that was not invited or provoked, (3) that was properly preserved at trial, such as by objection, motion to instruct, or motion for mistrial, (4) the error was not curable by instruction, prompt withdrawal of the statement, or reprimand by the court, and (5) the argument, by nature, degree, and extent, constituted reversible error based on an examination of the entire record to determine the argument's probable effect on a material finding. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839-40 (Tex. 1979).

Appellant fails to prove that the State committed reversible error in its opening statement because she has not fulfilled the first factor necessary to prove incurable jury argument. We cannot say that the prosecutor's partial statement in this case constituted improper argument. The statement was incomplete at the time of objection. There is consequently no way to determine what the State was specifically going to argue and whether such argument would have been improper. Instead, after defense counsel objected, the prosecutor merely proceeded with a summary of what she believed the evidence would show.

Further, the partial statement did not shift to the defense the State's burden on the issue of appellant's intent to deprive. The State was still required to prove that appellant had an intent to deprive the owner of property; to this end, the State presented ample evidence from which the jury could infer appellant's intent. The defense attempted to negate this element of the offense by introducing the theory that the cashier permitted appellant to leave the store without first paying for the film. Only after the State produced evidence of appellant's intent did the burden shift to the

4

defense to negate such element of the offense; the partial statement in the State's opening statement did not initially shift the burden of proof to appellant. We overrule appellant's first point of error.

In her second point of error, appellant argues that there was insufficient evidence for a jury to find beyond a reasonable doubt that Appellant had the requisite intent to deprive an owner of property. *See* Tex. Penal Code Ann. § 31.03(a) (West Supp. 2001). As in all criminal cases concerning insufficient evidence points of error, we must examine the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Staley v. State*, 887 S.W.2d 885, 888 (Tex. Crim. App. 1994).

Appellant specifically contends that, because the cashier who purportedly told her she could leave the store to retrieve money from the car did not testify, there was no evidence showing appellant had an intent to deprive. The State is not required to call every available witness. *Shelvin v. State*, 884 S.W.2d 874, 877 (Tex. App.—Austin 1994, pet. ref'd). Instead, the State is only required to prove its case beyond a reasonable doubt. *Id*.

A review of the evidence, viewed most favorably to the prosecution, reveals that even without the cashier's testimony, there was sufficient evidence for the jury to find beyond a reasonable doubt that appellant had the requisite intent to deprive the owner of property. Appellant picked up multiple rolls of film from the photo counter. She did not pay for the film at that time but instead indicated she would pay for them at the store pharmacy. She did not, however, pay for the film at the pharmacy. Nor did she pay for the film at the check-out counter. While appellant contends a cashier consented to her taking the film with her to the car to retrieve money, Lee testified that she

5

never heard the cashier or anyone else tell appellant that she could go to her car and get money for the film; further, Lee testified that on the day in question, appellant never indicated that the cashier had consented to her going to her car to retrieve more money. Vicci Smith, another Albertson's employee, testified that appellant "walked out the door with not planning on paying for [the film]."

Appellant left the store and proceeded to the parking lot. Lee testified that when she and the other Albertson's employees went out to the lot, appellant was getting into the driver's side of the car, ready to drive away. When asked, appellant could not produce a receipt for the rolls of film. Smith testified that when brought back into the store from the parking lot, appellant admitted that she had not paid for the film at the pharmacy, stated that she wanted to call her house to have someone there pay for the film, apologized, asked if there was anything she could do, and asked Albertson's management not to press charges against her. Such testimony constitutes sufficient evidence for a jury to find beyond a reasonable doubt that appellant had the requisite intent to deprive an owner of property when she left the store without paying for the film. We accordingly overrule appellant's second point of error.

By her third point of error, appellant argues that the trial court erred by admitting evidence of her community supervision status.[1] The challenged evidence was introduced through the following, objected to, exchange between appellant and the prosecuting attorney:

[Prosecutor]: . . . you've been on probation before; is that right?

---

[1] The terms "community supervision" and "probation" share the same meaning and are generally used interchangeably. *Rodriguez v. State*, 939 S.W.2d 211, 220 (Tex. App.—Austin 1997, no pet.).

[Appellant]:    Yes.

[Prosecutor]:   In fact, you've been on probation for theft-related offenses before; isn't that true?

[Appellant]:    Yes.

. . . .

[Prosecutor]:   With regard . . . to the probation that you are currently on for attempted credit card abuse --

[Appellant]:    Yes.

[Prosecutor]:   -- is it true that you understand that a finding of guilty in this case will jeopardize your probation status?

[Appellant]:    Yes, I do.

[Prosecutor]:   Okay. Is it also true then that you need to lie about what happened in order to protect your probation status?

[Appellant]:    No, I'm not here to lie.


Introduction of the evidence of appellant's probationary status for attempted credit card abuse was error under *Moreno v. State*, 22 S.W.3d 482 (Tex. Crim. App. 1999). In that case, the following exchange substantially identical to that which occurred in the present case also transpired between the prosecuting attorney and the defendant:

Q:  And it's true, isn't it, that a conviction in this case could result in that offense in the felony court being adjudicated?

A:  Yes.

Q:  And . . . isn't it true that a conviction in the felony court could result in you going to the penitentiary?

7

A: Yes.

*Id*. at 484. In *Moreno*, the court of criminal appeals held that because the relevance of the evidence that the State presented was "vanishingly low" in comparison with the danger of it misleading the jury and being used for unfair prejudice, the trial court abused its discretion in permitting the State to elicit evidence that the appellant was on community supervision. *Id*. at 489.

Here, all parties agree that introducing evidence of appellant's community supervision status contravened *Moreno*, and the trial court therefore abused its discretion by admitting it. *See id*. Our inquiry, however, does not end there because we must also decide whether the error was harmful. We do this by determining whether it affected appellant's substantial rights. Any error that does not affect appellant's substantial rights must be disregarded. *See* Tex. R. App. P. 44.2(b); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A defendant's "substantial rights" are affected when "the error had a substantial and injurious effect or influence in determining the jury's verdict." *King*, 953 S.W.2d at 271. "It must be determined whether the inadmissible evidence actually contributed to the jury's verdict." *Lopez v. State*, 990 S.W.2d 770, 777-78 (Tex. App.—Austin 1999, no pet.).

We cannot say that the trial court's admission of the complained of evidence here had a substantial or injurious influence on the jury's verdict. First, even absent the extraneous-offense evidence, the State adduced ample evidence, discussed above, from which the jury could find appellant guilty. Evidence of appellant's probationary status was introduced during cross-examination of appellant and referred to only briefly in the context of discussing witness credibility during the State's jury argument. The most damaging evidence introduced against appellant was the

8

testimony offered by the Albertson's employees; such evidence was heard before the extraneous-offense evidence was introduced.

Second, the record indicates that the inadmissible extraneous-offense testimony was not the focus of the body of evidence carefully scrutinized by the jury. During its deliberations, the jury presented two questions to the trial judge. First, the jury inquired into Vicci Smith's response during questioning when she was asked if she saw appellant produce a receipt at the car. Second, the jury asked about Yolanda Morales's testimony regarding what she witnessed at the store pharmacy. The jury did not ask to be read back any testimony regarding the extraneous-offense evidence. This indicates that the jury was not distracted by the extraneous-offense evidence but rather focused on the properly admitted evidence in formulating their verdict. In light of the testimony of Vicci Smith, Yolanda Morales, and Angela Lee, all of which conclusively supports a finding of guilty, we find that the complained of evidence had no substantial or injurious influence on the jury's decision. We thus overrule appellant's third point of error.

In her fourth and final point of error, appellant argues that the State improperly attacked appellant through her attorney by "striking at the defendant over the shoulders of counsel." *Bray v. State*, 478 S.W.2d 89, 90 (Tex. Crim. App. 1972). At one point during jury argument, the prosecuting attorney referred to testimony regarding defense counsel's alleged actions in returning to Albertson's a few months after appellant was arrested and providing a receipt to the store in an attempt to prove that appellant had paid for the photos:

> [Prosecutor]:   I think in a lot of ways her lawyer has been kind of an enabler in this case. You heard testimony about how he went back to the grocery store --

[Defense Counsel]: Objection, Your Honor. Improper argument.

[The Court]: On what basis? There was testimony about that.

[Defense Counsel]: Yes, Your Honor, but it is improper to accuse the attorney of being an enabler when -- I'll just state my objection and leave it for the record.

The record contains evidence that appellant's counsel went to Albertson's and that State made reference to that in argument. While appellant objected on the basis that the State's argument was "improper," such objection was not sufficiently specific to preserve for review the complaint she now makes. *See* Tex. R. App. P. 33.1(a)(1)(A). We thus overrule appellant's fourth and final point of error.

## CONCLUSION

Having overruled all of appellant's points of error, we affirm the judgment of conviction.

_____

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

Filed: June 7, 2001

Do Not Publish

10